261 So.2d 140 (1972)
THE FLORIDA BAR, Complainant,
v.
Harry H. TEITELMAN, Petitioner.
No. 41290.
Supreme Court of Florida.
April 5, 1972.
*141 Lyle D. Holcomb, Jr., Edward J. Atkins, Miami, Earl Drayton Farr, Jr., Punta Gorda, and Norman A. Faulkner, Tallahassee, for complainant, The Florida Bar.
Leo Greenfield, of Street & Greenfield, Miami, for petitioner, Harry H. Teitelman.
DEKLE, Justice.
Although this is a disciplinary proceeding for a "private" reprimand pursuant to Integration Rule of The Florida Bar, Art. XI, Rule 11.09(3) (f), 32 F.S.A., it has apparently reached us with an overriding purpose of prevailing upon this Court to render an opinion which will be helpful to the members of The Bar regarding the issues involved. Such goal apparently transcends the disciplinary recommendation by the Referee and The Florida Bar. (It is only for such higher purpose that we render this opinion, for, if affirmed, it would not be published, since any reprimand would otherwise not be "private".)
We recognize the conscientious concern which is expressed and therefore proceed with this opinion to crystalize in the affected area, what action constitutes the practice of law and improper professional conduct under the canons involved. We have also given the petition "precedence over all other civil causes in the Supreme Court" in accordance with Integration Rule 11.09(4).
The situation which arose involves real estate closings for a mortgage company. Petitioner-attorney regularly represents the title insurance company and mortgage company involved, in a large volume of residential closings, set one after the other in his law offices. He is apparently representing the buyer as well (who is getting the loan) in most instances. Many times the seller is not represented; on other occasions, *142 as here, he has an attorney. In either instance there are fixed forms which petitioner urges are required of the seller by his lending institution. He prepares and furnishes these in a "package form" to be executed by sellers. For this he charges an "attorney's fee of $25.00, for preparation of legal documents." It is so listed on the closing statement. The attorney (petitioner) estimates that for a period of years now he has closed approximately 300 such loans per year. (At $25.00 per closing  if a seller's attorney's fee were received in each case  this would amount to $7,500 a year.) Petitioner testified that under Federal Housing Authority Rules (most closings) he is "allowed" to charge the buyer $25.00 for a "package" of documents (consisting of mortgage, note, various affidavits, etc.). The charge allowed has since been raised. An expert witness testified that as to the seller, however, FHA has no control over the charges and fees and that "[I]t is open season on the seller... ."
Testimony also reflected that usually there is no notice to the seller prior to closing that he will be responsible for certain documents nor that a fee will be charged him for them; that usually there is no question raised and the matter proceeds without any problem; that where the seller has an attorney the petitioner usually ignores any documents the seller's attorney has prepared and asks him to use instead the "package" documents; that if there is any objection to the $25.00 charge for the documents then petitioner usually deletes the charge.
That this is what might be termed a "workshop" approach to a transaction which has apparently been treated here as almost a mechanical procedure, with time and money the principal concerns, is reflected by petitioner's testimony that in his opinion it is to a seller's advantage to attend the closing without an attorney because "no attorney would go to a closing for $25.00 and prepare all those documents." He rejects the Grievance Committee's position which would require him to advise sellers they may have attorneys at closings, because it would "make a hardship upon the sellers." (See Canon 7, 32 F.S.A., footnote 2, infra).
In this particular case the seller had engaged his own attorney, who likewise recognized the limited amount of time that was justified for the fee which he felt he could charge the seller. He prepared certain documents for the closing, to which he sent a law clerk in the office with the documents and closing instructions. A copy of a closing statement had been requested by him but was not furnished. At the closing petitioner informed the law clerk (in line with his usual practice) that he preferred to use his "package" of forms and the law clerk agreed to this but questioned that there should be any charge (the $25.00) for them. Petitioner said this was his standard charge. The seller also personally questioned this charge being levied in addition to that of her own attorney. The law clerk appeased her by saying that they should go ahead and that the attorney in his office would take care of the problem when he got back. The seller testified that she was angry at the additional charge being made; that she understood the petitioner at the closing to say that the FHA would not accept her attorney's papers and that she signed petitioner's documents "under protest." Petitioner denied seller's objection being made in his presence, stating that he would have taken the charge out had she done so, but confirmed that her attorney's documents would have been unacceptable. He was concerned with a gap of 14 days between execution of the no-lien affidavit which had been brought and the date of closing, during which repairs might have been made.
It becomes apparent that all of this, in the seller's presence and under these circumstances, was at the very least most unseemly in the practice of law on the high level which is demanded by the profession. The reaction of the seller as a client is proof of the bad effect which this type of "closing mill" has upon our public image and the standing of attorneys at law. For *143 many members of the public, a real estate transaction is one of the few contacts which they have with the law and with attorneys personally, so that it is the only opportunity they have to form an impression from direct contact. It is therefore important that such transactions be treated on the same high professional standard as litigation in the courts, preparation of contracts and other legal procedures. Despite the pressures and temptations present, and at times the limited remuneration, an attorney must not allow the $ mark to blind or even to dim the guiding light from our profession's polar star  the legal ethic.
Opportunity should be afforded to have an attorney's representation, no matter the amount of the recompense or whether the attorney finds it more expedient to use "package" instruments in the transaction. Lawyer referral services by Bar groups over the state fulfill this very purpose. The profession's image and standing are more important than the expediency which supposedly demands mass production procedures.
There is no doubt whatever that petitioner's use of the "package" forms, or any related forms of a legal nature, clearly constitutes the practice of law. The challenge of that fact by an attorney seems almost a reflection upon an understanding of the law and of professional ethics. The suggestion that it is merely a "scrivener's" task borders on the presumptuous. In the completion of legal forms it is what may be left out as well as that included which can be a very serious consequence. The advices essential to the completion of such documents almost invariably place their completion in the realm of the practice of law. It requires one skilled in the law for a proper completion of such matters, particularly those dealing with transactions involving real property which are treated by the law upon the highest level as requiring the greatest formalities and safeguards.
As we have said in the early case on the subject, Keyes Co. v. Dade County Bar Ass'n., 46 So.2d 605 at 606 (Fla. 1950):
"[T]he preparation and execution of the instruments effectuating the transfer should be under the lawyer's supervision, if the parties decide that they need expert advice and service."
There is evidence in this record that petitioner prepared legal documents to be executed by the seller in furtherance of her contract to sell land, which documents were in fact employed by the seller for that purpose and petitioner charged the seller a fee therefor. This is unmistakably representing the seller.
Where the seller is represented by other counsel there is no justification for an attorney for the buyer or lender charging any fee to the seller unless it is definitely agreed between the attorneys with the express agreement of the seller. And where the seller is NOT so represented, he can be charged NO fee by the buyer's or lender's attorney absent 1) a client-attorney relationship between such attorney and the seller, 2) together with a full disclosure that the attorney also represents adverse interests in the closing, of which full disclosure must be made to the seller of all circumstances, relationships and interests involved and 3) after such full disclosure the attorney obtains the consent of the seller for an agreed representation by the attorney and only then 4) a fee which must be agreed upon between them prior to undertaking any services.[1] This is so basic to the practice of law and ethical considerations of the profession that the present *144 emphatic renunciation of it should place the matter at rest for all time.
Opinion 64-56 (Sept. 29, 1964), Selected Opinions, Professional Ethics Committee, The Florida Bar, 1959-67, pp. 237, 238, holds as follows:
"It is improper for the mortgage company attorney to charge Seller an attorney's fee in the absence of any agreement between the attorney and Seller. It is not improper for the attorney to collect a reasonable fee for his services provided Seller has agreed with Buyer to pay all closing costs and providing the fee is part of the closing costs.
"Further, Seller should be fully advised of the circumstances because the attorney represents the lending institution, not the Seller, and the interest of these parties could well be in conflict. Preferably, Seller should be represented by an attorney of his own choice." (Emphasis ours.)
Opinion 65-34, p. 298 (June 15, 1965), Professional Ethics Committee of The Florida Bar, points out the same rule applying in the reverse circumstances:
"A seller of real estate may, if he wishes, insist that his attorney draw all papers involved in the transaction. The buyer, in turn, may execute or refuse to execute these papers. Who pays the attorney is a matter of contract. If the seller employs the attorney he is primarily liable for the fees. Unless the buyer in some way contracts to pay these fees, he is under no obligation to do so." (Emphasis ours.)
Other states hold likewise. The Standing Committee on Legal Ethics of the Virginia State Bar in its Opinion No. 70 (Feb. 13, 1957) dealt with representation of conflicting interests in holding the following:
"Should there be no apparent conflict of interest between the parties at the time of their joint employment of Mr. X, the Committee is of the opinion that it is proper for him to undertake such employment, provided a full disclosure of that fact is made to all parties." (Emphasis ours.)
The State Bar of Michigan's Committee on Professional and Judicial Ethics in Opinion 98 (Nov. 1946), involving a lawyer employed full time by a bank to draw deeds and handle transactions for the bank held the following:
"Confusion is apt to be caused over reimbursement of the bank-lawyer's fee when such reimbursement is not made directly to the bank but is, at its direction, paid by the borrower directly to the bank's lawyer. The borrower may easily gain the impression that such lawyer represents him, either individually or jointly with the bank.
"It is the active duty of the bank's lawyer under these circumstances to make clear to the borrower that he represents solely the bank in all of the legal incidents of such transaction... ."
"[W]e have not overlooked the possibility of conflicting interest which the lawyer may be called upon to represent in case the borrower should attempt to employ the same lawyer to represent him in the transaction... . It seems probable that if the borrower were frankly informed that the lawyer was already on the bank's payroll, or in its constant employ, he might reasonably object to paying an additional fee, presumably equal to what would be charged by a disinterested lawyer of his own choice. In short, the `full disclosure' contemplated by Canon 6 would probably be fatal to such employment in a large number of cases. The lawyer who thus acts for both the bank and the borrower must bear the burden, if the matter is ever questioned, of showing that every relevant fact was disclosed by him to the borrower before he undertook such dual representation." (Reported in 29 Mich. St.Bar J. No. 5, at pages 124-126.)
Except for the unusual circumstances and apparent misunderstandings involved between the attorneys in this particular case, there would likewise appear to be a breach *145 of Canon 7,[2] regarding interference with employment to other counsel.
This has been the clear holding of other states throughout the Union. To cite just a typical example we refer to Pioneer Title Ins. & Trust Co. v. State Bar of Nevada, 74 Nev. 186, 326 P.2d 408 (1958), enjoining company stenographers from preparing deeds, mortgages, notes and like instruments from printed forms previously approved by the company attorney and thereafter checked by him. The court held at p. 411:
"The difficulty with the company's position is that its services did not end with the clerical preparation of the instruments by the escrow officer and stenographer. It was the company itself which judged of the legal sufficiency of the instruments to accomplish the agreement of the parties. In the drafting of any instrument, simple or complex, this exercise of judgment distinguishes the legal from the clerical service." (Emphasis ours.)
To like effect are: Indiana ex rel. Indiana State Bar Ass'n v. Indiana Real Estate Ass'n., Inc., 244 Ind. 214, 191 N.E.2d 711 (Ind. 1963); State Bar of Michigan v. Kupris, 366 Mich. 688, 116 N.W.2d 341 (Mich. 1962); In Re Opinion of the Justices, 289 Mass. 607, 194 N.E. 313 (Mass. 1935).
In light of the inconclusive and unusual circumstances giving rise to the unfortunate developments here, and in the higher interest of devoting an opinion to higher standards, we conclude that the recommendation for and issuance of private reprimand in these circumstances was not warranted and accordingly the Private Reprimand of the Eleventh Judicial Circuit Grievance Committee "F" on April 14, 1970, pursuant to Integration Rule of The Florida Bar, Article XI, Rule 11.04 "C", and the confirming Private Reprimand by The Florida Bar on April 27, 1971, are hereby quashed.
It is assumed that the principles herein announced will be fully recognized and followed hereafter by petitioner. Any future deviation therefrom would in any subsequent proceeding be weighed in the light of this clear admonition.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON and McCAIN, JJ., concur.
NOTES
[1] Canon 6 (representing differing interests; disclosure). Now in Canon 5, DR 5-101 (A), 5-105(C); EC 5-14, 5-15, 5-16, 5-19, 32 F.S.A. See Cross Ref. Table of Canons, The Florida Bar Journal, Oct. 1969, pp. 1210-12; 32 F.S.A. Pocket Part.

DR 5-105(C): "[A] lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."
[2] Now encompassed in Canon 2, DR 2-103 (A), 2-104(A), 2-107 and EC 2-2, 2-3, 2-4 and 2-8. Excerpts:

"DR 2-103 Recommendation of Professional Employment.
"(A) A lawyer shall not recommend employment, as a private practitioner, of himself, his partner, or associate to a non-lawyer who has not sought his advice regarding employment of a lawyer." (Emphasis ours.)
"DR 2-104 Suggestion of Need of Legal Services.
"(A) A lawyer who has given unsolicited advice to a layman that he should obtain counsel or take legal action shall not accept employment resulting from that advice, except that: ..." (not applicable here).