558 So.2d 1022 (1990)
THE FLORIDA BAR, Complainant,
v.
Anthony L. BAJOCZKY, Respondent.
No. 73377.
Supreme Court of Florida.
March 22, 1990.
John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel, and James N. Watson, Jr., Bar Counsel, Tallahassee, for complainant.
John A. Weiss, Tallahassee, for respondent.
PER CURIAM.
The respondent petitions this Court to review the referee's report recommending he be publicly reprimanded. We have jurisdiction. Art. V, § 15, Fla. Const.
In her findings of fact, the referee concluded that Bajoczky was retained to represent Janet Gary Cox in a marital dissolution *1023 proceeding. Cox paid Bajoczky with $3,000 borrowed by Cox's parents, the Garys, for their daughter to use. Later, Bajoczky requested another $2,000 in fees, which Cox also paid from funds borrowed by the Garys for their daughter.
The dissolution proceeding was complicated, involving several properties and businesses owned by Cox and her husband, which had incurred a number of substantial liabilities. At the time the proceedings began, there was a risk Cox might be forced into bankruptcy. After the dissolution was final, Bajoczky obtained a settlement agreement by which Cox's husband agreed to pay $4,000 in cash and execute a second mortgage for $16,000 in favor of his wife's parents in satisfaction of their equity in one of the Cox's businesses.
Cox asked that her former husband give the $4,000 in cash directly to her parents to partly repay money loaned by the Garys to help the Coxes set up this business. The parents later testified that they had never entered into any agreement with Bajoczky and had understood that the $4,000 money would be paid to them by their former son-in-law.
When the settlement check arrived, it was in the name of Cox's parents and Bajoczky. Cox's parents testified that they went to Bajoczky's office and waited for two hours for the attorney to return. When Bajoczky did not appear, the Garys said they endorsed the check with the understanding that Bajoczky then also would endorse it and pay them the $4,000 after he had returned to his office.
Bajoczky, however, testified that the parties had agreed to apply the $4,000 toward attorney's fees. This contention was supported by testimony from Bajoczky's legal associate, Ms. Fournier. Based on this understanding, Bajoczky later sent Cox and her parents a notice that he had used the money for this purpose and would not pay it to Cox's parents.
The referee concluded that Bajoczky had engaged in conduct involving misrepresentation, in violation of Disciplinary Rule 1-102(A)(4) of the Code of Professional Responsibility. The referee gave the following reasons for this conclusion:
(1) There was no written agreement between Respondent and the Garys that they would be responsible for Janet Cox's attorneys fees.
(2) Mr. Gary was never present during any of the times Respondent testified that discussions took place regarding applying the $4,000.00 to Janet Cox's attorneys fees.
(3) The supplemental judgment clearly show[s] the $4,000.00 was to belong to the Garys.
(4) The testimony of the Garys and Janet Cox is supported by their having returned to Respondent's law office and wait[ed] several hours for Respondent's return. This supports their belief that Respondent was to return and endorse the trust account check.
(5) The Garys were nonparties to the dissolution action and the agreement of their receiving $4,000.00 for special equity contradicts the existence of any clear agreement that such money was to go to Respondent.
Based on these reasons, the referee recommended that Bajoczky be publicly reprimanded and pay the costs of this disciplinary proceeding.
In its complaint, The Florida Bar argues that Bajoczky's conduct, as characterized in the referee's report, constituted a deliberate conversion of funds. Bajoczky, however, argues that this Court should dismiss this complaint or at most impose a private reprimand, because the facts of this case were disputed.
Be that as it may, this Court does not sit in bar discipline hearings as a finder of fact. We have delegated this responsibility to the referees and, based on well-established principles of law, have determined that the referees' findings will be upheld unless they are without support in the evidence. The Florida Bar v. Carter, 410 So.2d 920, 922 (Fla. 1982); The Florida Bar v. Lopez, 406 So.2d 1100, 1102 (Fla. 1981); The Florida Bar v. Stillman, 401 So.2d 1306, 1307 (Fla. 1981); The Florida *1024 Bar v. McCain, 361 So.2d 700, 706 (Fla. 1978).
In this instance, the referee has determined the Garys' version of the facts to be truthful and has rejected that of Bajoczky and his associate. The Garys' story indicated, as the Bar has argued, a deliberate conversion of their funds. We can only conclude that there is substantial competent evidence supporting the referee's findings, because the Garys have supplied it in their testimony. Accordingly, we are bound by the referee's findings.
We note that a deliberate conversion of funds belonging to nonclients usually would warrant greater discipline than the referee has recommended. However, the particular facts of this case indicate otherwise, as the referee properly concluded. The Bar does not dispute that the quality of Bajoczky's legal representation was good. And it appears that all those involved in this matter  Cox, the Garys and Bajoczky alike  failed to be vigilant in specifying exactly what was to be done with the $4,000. However, because of Bajoczky's role and special skills as a lawyer, the referee placed the onus of this failure on Bajoczky.
We must agree with this decision. A lawyer's special training creates an obligation to make sure that clients understand and clearly consent to fee arrangements. The kind of self-help debt collection found to exist by the referee in this instance is impermissible. Indeed, Bajoczky in his brief asks the question, "[w]here was the rest of the money to come from" if not from the $4,000? This, we believe, was a concern Bajoczky should have resolved long before this proceeding. The fact that he must ask it now only underscores the conclusion that Bajoczky has failed to meet his obligation.
For the foregoing reasons, we adopt the findings of the referee and impose a public reprimand on Bajoczky. Judgment for costs is entered in favor of The Florida Bar in the amount of $1,680, for which sum let execution issue.
It is so ordered.
OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, C.J., concurs in part and dissents in part with an opinion.
EHRLICH, Chief Justice, concurring in part and dissenting in part.
I concur as to guilt but dissent as to the discipline imposed.
A supplemental judgment was entered in the divorce proceedings which provided that the Garys, who were not parties to the litigation, but were the wife's parents, would receive $4,000. The referee found that there was an agreement that the Garys would receive $4,000 at the time of the supplemental judgment with Kemuel Cox executing a second mortgage in favor of the Garys. After entry of the supplemental judgment, respondent was given a trust account check from the ex-husband's lawyer for $4,000 made out to Mr. and Mrs. Gary and respondent. After waiting for approximately two hours at respondent's offices with the respondent's associate for respondent to return from the courthouse, the Garys endorsed the trust account check and left respondent's offices. The Garys were of the belief that this $4,000 was to be given to them and was not to be applied to any outstanding attorney's fees owed by their daughter, Mrs. Cox. There was a dispute in the testimony as to whether there was an agreement between the parties that the $4,000 in question would go to the Garys or would be applied to the attorney's fee owed to respondent by Mrs. Cox. The referee concluded that "the supplemental judgment clearly shows that the $4,000 was to belong to the Garys." In short, the referee believed the Garys' understanding of the facts. At the time of the final hearing, the Garys had not received the $4,000 from respondent.
The referee's recommendation as to guilt was: "I hereby find that The Florida Bar has met its burden of proof and find (sp.) the respondent guilty of having violated Disciplinary Rule 1-102(A)(4) of the Code of Professional Responsibility of The Florida *1025 Bar by having engaged in conduct involving misrepresentation involving the handling of the $4,000 down payment received from Kemuel Cox." (Emphasis added.)
Misrepresentation is not a passive act. It is not something that happens by accident. It is not an act of negligence. As I perceive it, it is an intentional act. Among the several definitions of misrepresentation given in Black's Law Dictionary are these: "An incorrect or false representation." "Colloquially it is understood to mean a statement made to deceive or mislead." "In a limited sense, an intentional false statement respecting a matter of fact, made by one of the parties to a contract, which is material to the contract and influential in producing it."
In my view, the misrepresentation which the referee found under the facts of this case is at the very least closely akin to deceit or fraud. This is why I view the misconduct as being of a more serious nature than does the Court.
The majority says that a deliberate conversion of funds belonging to a nonclient usually would warrant greater discipline than the public reprimand that the referee recommended. I agree and that is the reason for my dissent.
The referee's report is silent as to the presence of any mitigating circumstances. While the referee concluded that the appropriate discipline was a public reprimand and the payment of costs of the proceedings, this Court is not bound by the discipline recommended. It is a recommendation and nothing more. It does not carry the authority or weight of a finding of fact by the referee.
The divorce proceedings were reported to be complicated. All indications are that he ably represented his client. But this does not excuse the defendant's conduct set forth in the referee's report. While respondent may have concluded that the collection of his fee was problematical without self help, his conduct was a clear violation of the Code of Professional Responsibility. The offense for which respondent was found guilty by the referee is a serious one and in my view warrants more than a rap on the wrist in the form of a public reprimand. Based on the misconduct found by the referee, I think a suspension of not less than thirty days is warranted. Accordingly, I dissent from the Court's imposition of a public reprimand as the appropriate discipline.