591 So.2d 170 (1991)
THE FLORIDA BAR, Complainant,
v.
Walter J. BELLEVILLE, Respondent.
No. 75116.
Supreme Court of Florida.
December 5, 1991.
*171 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Jan Wichrowski, Bar Counsel, Orlando, for complainant.
Dennis F. Fountain, Longwood, for respondent.
PER CURIAM.
We have this case on complaint of The Florida Bar for review of a referee's report recommending that Walter J. Belleville, an attorney licensed in Florida, be found not guilty of alleged ethical violations. We have jurisdiction. Art. V, § 15, Fla. Const.
In the summer of 1988, Belleville was retained as counsel for Bradley M. Bloch. Bloch had entered into an agreement with James F. Cowan to purchase property owned by the latter. Cowan was an elderly man, eighty-three years of age, who had a third-grade education. While the evidence showed that Cowan had substantial prior experience in selling real estate when he was younger, neither party to this cause disputes that the various written documents alleged to constitute the agreement overwhelmingly favored the buyer, Mr. Bloch. Cowan, in fact, has subsequently disputed that he ever agreed to some of the terms embodied in these documents.[1]
Although Cowan and Bloch had negotiated only for the sale of an apartment building, the documents stated that Cowan was selling both the apartment building and his residence, which was located across the street from the apartments. The referee specifically found that Cowan had no intention of selling his residence and did not know that it was included in the sale. The record substantially supports this finding, which accordingly must be accepted as fact by this Court. The Fla. Bar v. Bajoczky, 558 So.2d 1022 (Fla. 1990).
It is unclear whether Belleville knowingly participated in his client's activities or merely followed the client's instructions without question. Whatever the case, Belleville drafted the relevant documents to include the legal description of Cowan's house in the instruments of sale. Cowan then apparently signed the documents without realizing he was transferring title to his house. No one at the closing explained the significance of the legal description to him. Belleville only sent a paralegal to the closing and did not attend it himself. In fact, he had never met Cowan to this point in time.
In exchange for the apartment and his residence, Cowan received only a promissory note, not a mortgage. The loan thus was unsecured. This note provided for ten percent interest amortized over twenty-five years. However, the first payment was deferred for four months with no apparent provision for interest to accumulate during this time, and the note by its own terms will become unenforceable upon Cowan's death. Finally, the documents called for Cowan to pay the closing costs, which Bloch and Belleville construed as including Belleville's attorney fee of $625.
When Cowan received the promissory note and closing documents, he realized that their terms varied from the agreement he thought he had entered. Cowan contacted an attorney, who wrote a letter to Belleville explaining the points of disagreement. The next day, Bloch attempted to evict Cowan from his home.
The referee recommended no discipline based on his conclusion that Belleville owed no attorney-client obligation to Cowan. The Board of Governors of The Florida Bar voted to appeal this decision, and the Bar now seeks a thirty-day suspension.
While it is true that the factual findings of a referee may not be disturbed unless clearly and convincingly wrong, Bajoczky, we do not find that the present case turns on a dispute about the facts. The essential facts are not in question; and Belleville himself concedes with some understatement that "Mr. Cowan did not have a particularly good deal as a result of his negotiations with Mr. Bloch." Rather, the disagreement in this case is over Belleville's guilt and the appropriate discipline, if any. *172 This is a question entirely of law that we must decide. As former Chief Justice Ehrlich has noted, a referee's recommendation "is a recommendation and nothing more. It does not carry the authority or weight of a finding of fact by the referee." Bajoczky, 558 So.2d at 1025.
Based on the facts, we cannot accept the referee's recommendation about guilt and punishment. The referee's factual findings established that Cowan had negotiated to sell the apartment, that he did not intend to sell anything other than the apartment, and that he did not know that the documents of sale would result in the loss of his residence. It also is clear Belleville should have harbored suspicions about the documents he was preparing, because the documents established on their face a transaction so one-sided as to put Belleville on notice of the likelihood of their unconscionability.
When faced with this factual scenario, we believe an attorney is under an ethical obligation to do two things. First, the attorney must explain to the unrepresented opposing party the fact that the attorney is representing an adverse interest. Second, the attorney must explain the material terms of the documents that the attorney has drafted for the client so that the opposing party fully understands their actual effect.[2] When the transaction is as one-sided as that in the present case, counsel preparing the documents is under an ethical duty to make sure that an unrepresented party understands the possible detrimental effect of the transaction and the fact that the attorney's loyalty lies with the client alone. R. Regulating Fla.Bar 4-1.7.
We recognize that The Florida Bar relies on The Florida Bar v. Teitelman, 261 So.2d 140 (Fla. 1972), which is somewhat distinguishable from the present case. Teitelman dealt with those situations in which an attorney, while representing one party, also directly bills the other party a fee for preparing legal documents. In the present case, the parties themselves contractually agreed that one would pay the other's attorney's fee.[3]
We do not believe Teitelman stands for the proposition that an agreement by one party to pay the other party's attorney fee always makes the payor a client of the attorney, provided dual representation has not occurred and provided the payor either is represented by counsel or is given the warnings required in this opinion if the payor is relying on legal statements or documents prepared by the attorney for the client. However, Teitelman does stand for the proposition that an attorney must avoid the appearance of simultaneously representing adverse interests, especially where the opposing party may be unfairly induced to rely on the attorney's advice or skill in preparing legal documents. Here, Belleville breached that duty. R. Regulating Fla.Bar 4-1.7.
For the foregoing reasons, we adopt the referee's findings of fact but reject the recommendations regarding guilt and discipline. The violation Belleville committed is a serious one in light of the fact that he previously has been disciplined for an ethical violation. The Fla. Bar v. Belleville, 529 So.2d 1109 (Fla. 1988). Accordingly, we grant the request of The Florida Bar. Walter J. Belleville is hereby suspended from the practice of law for a period of thirty days, commencing on January 6, 1992. Belleville shall take all steps necessary to protect his present clients' interests and shall provide them with notice of his suspension, as required by the Rules Regulating The Florida Bar. He shall accept no new business from the date this opinion is issued. Judgment for costs in the amount of $1,220.30 is entered against Belleville in *173 favor of The Florida Bar, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The Florida Bar has not charged Belleville with any fraud-related violation, and we accordingly express no opinion as to whether such a violation occurred.
[2] We limit this holding to the facts of this case. We have no intent to mandate that an attorney who has prepared documents for a real estate closing always must be present at the closing to explain the documents to the respective parties.
[3] We do not imply that such an agreement existed here in an enforceable form. Cowan has disputed many of the terms of the alleged agreement. We assume solely for resolving the ethical issues of this case that Cowan had agreed to pay Bloch's attorney fees.