610 So.2d 442 (1992)
THE FLORIDA BAR, Complainant,
v.
Howard GROSS, Respondent.
No. 75347.
Supreme Court of Florida.
December 24, 1992.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, David G. McGunegle, Bar Counsel, Orlando, and Warren Jay Stamm, Bar Counsel, Miami, for complainant.
Rhea P. Grossman of Rhea P. Grossman, P.A., Miami, for respondent.
PER CURIAM.
Howard Gross seeks review of the referee's finding of guilt and recommended discipline in this matter. We have jurisdiction. Art. V, § 15, Fla. Const.
Gross was charged with violating certain Rules Regulating The Florida Bar: rule 4-8.3(a) (mandatory duty to report professional misconduct of another lawyer) and rule 4-8.4(a), (c) & (d) (violating the rules of professional conduct; engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; and engaging in conduct prejudicial to the administration of justice). The alleged violations arose during an investigation by the State Attorney's Office and the Florida Department of Law Enforcement into a suspected bribery and conspiracy involving former attorney Harvey S. Swickle and then Circuit Court Judge Howard Gross, respondent in this action.
Pursuant to the investigation and a judicial order, dialed number recorders, commonly known as "pen registers," were installed on the Swickle and Gross residences. In addition, Undercover Agent Cassal was equipped with a body bug to record conversations between him and Swickle.
The events giving rise to these charges began early in the evening on October 7, 1987, and culminated in an exchange of monies on the morning of October 8, 1987. A fictitious defendant known as Orlando Zirio was placed in the Dade County Jail system on October 7 and charged with cocaine trafficking, conspiracy to traffic in cocaine, and possession of cocaine. The multiple charges accounted for a $750,000 bond on Zirio. Agent Cassal posed as a representative of wealthy South American *443 principals who wanted to secure the release of their employee, defendant Zirio.
Cassal contacted attorney Swickle. In discussions during the late afternoon of October 7, Cassal implied to Swickle that he was engaged in questionable businesses, that he needed to secure the release of his "runner" Zirio, and that Zirio was arrested with approximately one dozen kilos of cocaine.
Cassal emphasized to Swickle the urgency in securing Zirio's release and having the bond lowered to effectuate the release. Swickle implied he could have the bond lowered in an emergency hearing that evening, if "[his] guy" was the on-duty judge.
Pen registers indicated that twelve calls were made from Swickle's phone to the Gross residence within a twelve-minute period. Later, pen register activity indicated an outgoing call from Gross to Swickle which lasted two minutes, forty-three seconds. Thereafter, Gross called the Dade County jail facility.
When Cassal told Swickle that his people could meet a $200,000 bond, Swickle replied that he required a $20,000 retainer. Cassal met Swickle that evening with $10,000, and said another $10,000 would be forthcoming. Expressing concern about the balance of the retainer, Swickle said he could not "have someone do something unless they know that, that ah, I'm fully represented." See Report of Referee at 7, The Florida Bar v. Gross, 582 So.2d 624 (1991). Shortly thereafter, Swickle telephoned Gross and the following telephone call was recorded:
Swickle: Yeah, OK, I've, ah, I've got the signed contract.
Gross: So they did, this man now has a lawyer.
Swickle: Yes sir.
Gross: OK, if you are his lawyer and you tell me those are the facts, I'll reduce the bond accordingly.
Swickle: Ah, what time you going to be in?
Gross: I'll be in, ah, probably eight fifteen.
Swickle: Umm.
Gross: I'll be there all day. I've got that murder trial.
Swickle: That's right. I am, I'm going to be tied up. How about if I meet you in the morning at the house.
Gross: Where here?
Swickle: Yeah.
Gross: Well, I don't care, it doesn't matter.
Swickle: About eight.
Gross: Yeah.
Swickle: OK.
Id. at 7-8. The referee found the conversation between Swickle and Gross
sufficiently cryptic for the finder of fact to conclude that the attainment of "the signed contract" was in fact the parties' code that the funds with which to effectuate the bribery had been secured.... Having been apprised of the necessary information, (the acquisition of the bribery money) at 10:47 p.m. Judge Gross placed a call to the Dade County Jail.
Id. at 8-9. Gross reduced the bond from $750,000 to $200,000.
Swickle received the remaining $10,000 from Cassal in two payments during the early morning hours following the bond reduction. Although the bond had already been reduced, Swickle deliberately misled Cassal to believe that it had not. The referee found "that Sickle was attempting to secure full payment before delivering his part of the deal." Id. at 9. At 8 a.m., shortly following collection of the last payment by Cassal, Swickle met Gross in Gross's driveway and delivered $5,000 cash and other monies unrelated to the present case.
The referee found:
Standing alone, the above outlined events would be sufficient to establish evidence of the offer and acceptance of a bribe by the Respondent. By presenting evidence that Judge Gross lowered a bond for an attorney's client in an emergency ex parte proceeding and then received a cash payment from that same attorney the very next morning, the Bar has met *444 its burden of proof in establishing a prima facie case.
Id. at 10.[1]
To dispute the Bar's evidence, Gross testified that the exchange of money was partial payment for a $15,000 debt, past due more than ten years. The referee found Gross's evidence "implausible." Not only did Gross never list the alleged debt as an asset on his financial disclosure statement,[2] but he also failed to produce any personal records to evidence the debt save a single piece of paper with numbers alleged to be a record of repayments. The referee noted that the absence of records was particularly suspect when considering testimony of Gross's own witness relating to Gross's otherwise meticulous financial record-keeping.
Gross argues that the referee's findings are clearly erroneous and not supported by legally sufficient evidence. He contends that the Bar has failed to meet the clear and convincing standard of proof.[3] While the Bar has the burden of proof in Bar disciplinary proceedings, The Fla. Bar v. Hooper, 509 So.2d 289, 290 (Fla. 1987), this Court has delegated the responsibility of fact finding to the referee. The Fla. Bar v. Bajoczky, 558 So.2d 1022 (Fla. 1990). A referee's findings enjoy the same presumption of correctness as the judgment of a trier of fact in a civil proceeding. See Hooper, 509 So.2d at 290-91. Upon review, this Court must sustain a referee's findings if they are supported by competent and substantial evidence. Id. at 291. See also The Fla. Bar v. Bajoczky, 558 So.2d 1022 (Fla. 1990) (a referee's findings will be upheld unless they are without support in the evidence). Further, it is clear that misconduct as a judge may be grounds for attorney discipline. The Fla. Bar v. McCain, 330 So.2d 712 (Fla. 1976).
There is competent and substantial evidence to support the referee's findings. The circumstantial evidence of guilt was strong. Moreover, the referee had a right not to believe Gross's explanation that the transfer of the $5,000 was for the repayment of a loan. Accordingly, we approve the referee's factual findings and accept the recommended discipline. Respondent Howard Gross is hereby disbarred. The disbarment will be effective thirty days from the filing of this opinion so that respondent can close out his practice and protect the interests of existing clients. If respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the disbarment effective immediately. Respondent shall accept no new business from the date this opinion is filed. Judgment for costs in the amount of $1,971.21 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
*445 BARKETT, C.J., OVERTON, SHAW, GRIMES and HARDING, JJ., and JAMES E. JOANOS and DOUGLASS B. SHIVERS, Associate Justices, concur.
McDONALD and KOGAN, JJ., recused.
NOTES
[1] Because Swickle had invoked his Fifth Amendment right not to testify, the Bar called agent Coffee to testify regarding Swickle's post-arrest statements. Swickle told Coffee that he had made arrangements with Gross to lower a bond on two occasions. He said he had paid Gross $5,000 for assisting in lowering a bond in 1986. The referee admitted the statements to show Swickle's state of mind that he had a continuing agreement to influence Gross for money. The referee indicated that the statements were not admitted for the truth of the matters asserted. Gross's argument that the admission of this testimony violated the rule in criminal cases which precludes the introduction of a codefendant's custodial statement implicating the defendant is inapplicable to this case. Even if Swickle's state of mind was not pertinent, it appears that the testimony was admissible as a statement against penal interest under section 90.804(2)(c), Florida Statutes (1989). However, because the referee did not consider Swickle's statements for the truth of the matters asserted, we have also not done so in our evaluation of the sufficiency of the evidence.
[2] Gross also complains that his due process rights were violated when the referee "became an advocate" and, sua sponte, ordered production of Gross's financial disclosure statements. The entry of such an order was well within the referee's discretion. See The Fla. Bar v. Stillman, 401 So.2d 1306 (Fla. 1981).
[3] Gross also suggests that he should prevail on the doctrine of collateral estoppel because in earlier disciplinary proceedings the same referee concluded that the evidence was insufficient to prove that Swickle had bribed Gross to lower Zirio's bond. There is no merit to this contention because of the lack of mutuality of parties. Zeidwig v. Ward, 548 So.2d 209 (Fla. 1989).