334 So.2d 1 (1976)
THE FLORIDA BAR, Complainant,
v.
Edwin L. MASON, Respondent.
No. 47525.
Supreme Court of Florida.
January 15, 1976.
Order Establishing Effective Date of Suspension June 30, 1976.
Bernard H. Dempsey, Jr., Bar Counsel, Orlando, Richard C. McFarlain, Asst. Director; and Wilson J. Foster, Jr., Asst. Staff Counsel, Tallahassee, for The Florida Bar, complainant.
Edgar M. Moore, of Smith & Moore, Tallahassee, for respondent.
PER CURIAM.
This disciplinary proceeding is before a special panel of this Court upon complaint of The Florida Bar, report of the Referee, and petition for review filed by the respondent.
Chief Justice Adkins and Justices Roberts, Boyd, England, and Sundberg have been disqualified in this matter for cause. Sitting in their respective positions are five chief judges of the respective circuits selected in order of circuit court judicial seniority excluding only those disqualified or unavailable to participate in this matter.
This cause concerns admitted ex parte communications upon the merits of a pending case with Justices of this Court, and respondent's subsequent intentional concealment of the fact of the communications from opposing counsel.
The Referee found respondent guilty of the principal charges, and recommended a public reprimand and suspension for a period of one year and thereafter until respondent shall have proven his rehabilitation, together with the payment of the costs of these proceedings.
We agree that the actions and conduct of the respondent are clear and serious violations of the Code of Professional Responsibility. This misconduct is magnified because it concerns the highest court of this state and has caused public mistrust of not only this Court but the system as a whole. We find the recommended discipline appropriate.
The charges, findings, and recommended discipline are detailed for the benefit of the public and the Bar.
*2 The Florida Bar filed a four-count complaint, charging respondent with ethical violations arising out of the ex parte communications with Justices of the Supreme Court concerning the case of Gulf Power Company v. Bevis, 289 So.2d 401 (Fla. 1974), then pending before the Court. Count one charged that respondent engaged in prohibited communications between July and November, 1973, with Justices of the Supreme Court concerning the merits of the Gulf Power case. Count two charged the respondent with refusal to reveal the mentioned prohibited communications when he was asked about them by an opposing counsel of record prior to the rendition of the decision. Count three charged that respondent had testified falsely relative to rumors or gossip he allegedly heard in June or early July, 1973, to the effect that the Supreme Court had voted to reverse the decision of the Public Service Commission in the Gulf Power case and that Justice Boyd had been assigned to write the majority opinion. Count four charged that respondent testified falsely concerning whether he offered to supply the ex parte memorandum of law or whether Justice Boyd had requested him to prepare the memorandum.
The Referee found the evidence inadequate to support a finding of guilt with reference to count four and dismissed those charges. The following are the Referee's findings of fact relating to counts one, two, and three of the Bar's complaint:

"A. Count I:
"1. Gulf Power Company filed a petition for a writ of certiorari in the Supreme Court of Florida on January 8, 1973 to have reviewed an order of the Florida Public Service Commission in a rate case. Broadly stated, the issue involved the treatment to be accorded the recently enacted State Corporate Income Tax Law in the calculation of test year expenses for rate making purposes.
"2. Edwin L. Mason (hereinafter Mason) then requested the Court to allow him to file briefs as amicus curiae, and be heard on behalf of Gulf Telephone Company and St. Joseph Telephone and Telegraph Co. This request was granted, Mason filed amicus briefs, and participated in oral argument of the cause on June 7, 1973. The panel assigned to the case consisted of then Chief Justice Carlton, and Justices Adkins, McCain, Boyd, and Dekle.
"3. In late June or early July, 1973 Mason discussed Gulf Power Company v. Bevis with Justice Boyd during a golf game. From this discussion Mason concluded that Justice Boyd had been assigned to write the majority opinion in favor of Gulf Power Company, and that the case was a difficult one with which the Justice could use assistance beyond the briefs which had been filed.
"4. Mason solicited Louis Petteway, an experienced public utilities attorney, to assist him in the preparation of a concise memorandum of law concerning the mentioned principal issue in the case. Petteway billed St. Joseph Telephone and Telegraph Co. and Gulf Telephone Co. for his work on the memorandum, but Mason did not render a statement for his services. The completed memorandum was approximately fourteen pages on long legal style paper. Mason showed the memorandum to his law partner for review, after which one copy was given to Petteway, and one copy was delivered to Justice Boyd in July, 1973.
"5. There is conflicting testimony concerning the circumstances which led to the creation and delivery of the memorandum to Justice Boyd. Mason, however, admits to having prepared the memorandum with the intention that it be used by the Court, and to having delivered it without notifying counsel of record that he had done so, and without having served copies of it on such counsel. Other witnesses, including Justices Boyd and Dekle, substantiated the existence of the memorandum, and its use as an aid in the preparation of the majority opinion. It is therefore unnecessary to *3 the ultimate disposition of this cause to resolve the conflicting testimony concerning the genisis [sic] of the memorandum, its delivery, and ultimate use.
"6. The memorandum itself is no longer in existence, but there was adequate evidence concerning its preparation, content, and style to establish that it did exist. In addition that it was given to Justices Boyd and Dekle in a form that did not include a case caption, certificate of service, or clerk's file stamp. The Court's Progress Docket does not indicate that the memorandum was docketed.
"7. Mason also delivered a copy of the memorandum to Justice Dekle in July, 1973 and expressed the hope that it might be helpful in the event the Justice concurred with the majority. Justice Dekle did not invite, nor was he forwarned [sic] of Mason's visit to chambers. There is no direct evidence that they discussed the substance of the case. Justice Dekle, who was not then assigned to write the opinion, put the memorandum aside without immediately reading it.
"Mason made a second visit to Justice Dekle in chambers on or about November 30, 1973 for the purpose (according to Mason) of inquiring concerning the status of the case. To the contrary, however, it appears from an interoffice memorandum between Justices Dekle and McCain dated November 30, 1973 that Mason probably discussed the merits of Gulf Power Company v. Bevis with Justice Dekle that day.
"Justice Dekle testified that as a result of Mason's November 30 visit, he placed the case on an expedited basis for final disposition.
"Although Mason and Justice Dekle denied having discussed the merits of the case on or about November 30, 1973, the wording of the memorandum between the Justices; the status of the opinion then in preparation; the manner in which the ex parte memorandum was used; and Mason's subsequent evasion of a pointed inquiry made by opposing counsel the following month concerning the chambers visit, lead to the finding that the two men discussed the merits of the case.
"8. For the sake of rendering a complete report, mention is made of the fact that Justice Boyd was initially assigned to write the majority opinion in favor of Gulf Power Company. It came to pass that his was the minority view, and Justice Dekle wrote the majority opinion in favor of the utility in which Chief Justice Carlton specially concurred. Both Justice Dekle and his then Research Aide testified that substantial reliance was placed upon the memorandum in the preparation of the majority opinion.
"There is no question but that knowledgeable utilities counsel agree the majority opinion is a correct statement of the law. It is impossible to compare the subject memorandum with the Court's opinion, but the opinion does cite and follow the authorities and argument contained in the petitioner's briefs. Thus, the fabric of substantive Florida jurisprudence was not impaired by the use of the memorandum, although its proffer and use was [sic] unquestionably wrong.
"9. The Supreme Court [decision] in Gulf Power Company v. Bevis was rendered January 30, 1975 [1974] holding generally in favor of the utility that the State Corporate Income Tax was a proper operating expense for rate making purposes. Justice Dekle wrote the opinion in which Justices Adkins and McCain concurred, and Chief Justice Carlton concurred specially. Justice Boyd dissented.

"B. Count II:
"1. Arthur J. England, Jr. appeared in Gulf Power Company v. Bevis as a respondent in his capacity as Consumer Advisor and Special Counsel to the Governor. On December 17, 1973 he wrote to Mason to mention a report published in the St. Petersburg Times two days previously. The newspaper reported that Mason had at *4 least one private discussion with Justice Dekle concerning the case which the Justice characterized as a routine inquiry. Mention was also made of an interoffice memo between Justices Dekle and McCain concerning the case, and Mason's visit to chambers. The same article reported that England had inquired of the Clerk's office concerning the status of the case. England's letter merely emphasized the nature of his inquiry in the Clerk's office.
"2. On December 28, 1973 England again wrote to Mason, but this was a pointed request, i.e.:
"`... I would like to have your explanation of that [November 30 conversation with Justice Dekle] and any other meeting, and if you at any time furnished the Court or any Justice with written material not on the record, I would like to have a copy of those documents.'
"Mason replied to this inquiry by letter dated January 7, 1974 in which he wrote:
"`I, too, saw the piece in the St. Petersburg paper about my having spoken to Mr. Justice Dekle about a case pending before the Supreme Court. The article as I recall contained his explanation of the matter. Your present letter to me would indicate that you do not believe the Justice's explanation. Perhaps you should discuss the matter with him. In any event, I am forwarding your letter to him, together with my reply for his information.'
"3. England did not accept Mason's reply, and he again wrote on January 22, 1974 to express his disappointment that Mason had not availed himself of the opportunity to explain his ex parte communication with Justice Dekle. Mason did not reply to this letter, and failed to speak out on the subject until summoned as a witness by the Florida Judicial Qualifications Commission on July 17, 1974.
"Mason's testimony regarding his treatment of the England inquiry neither contradicts or [sic] mitigates in any way the above-mentioned correspondence or intracourt memorandum. He did not offer a creditable explanation of his refusal to make a candid response to England's inquiry, but instead continued to evade the obvious.

"C. Count III:
"1. Mason testified under oath on November 18 and 19, 1974 as a witness in the Justice Boyd inquiry before the Florida Judicial Qualifications Commission that shortly after the oral argument in Gulf Power Company v. Bevis, it was common discussion `around the Commission' [Florida Public Service Commission] that the Court had voted to overrule the Commission. He was unable to identify the participants in any such discussion or the source of a rumor to that effect.
"Mason reiterated the same testimony at the hearing in this cause. This testimony is found to be an attempt on his part to lay a predicate for his first contact or conversation with Justice Boyd concerning the case in late June or early July, 1973. As such, it was an additional reason to his some thirty-year friendship with Justice Boyd for his having had such an ex parte communication.
"2. Mason testified under oath on November 21, 1974 as a witness in the Justice Dekle inquiry before the Florida Judicial Qualifications Commission that his first discussion with Justice Boyd concerning Gulf Power Company v. Bevis, confirmed the rumors that he heard `around the Commission' that the Court had voted to reverse the Commission, and Justice Boyd had been assigned to write the opinion. This testimony was apparently for the same purpose as his above-mentioned testimony in the Justice Boyd proceeding, and in this cause.
"3. Mason repeated the `rumor around the Commission' testimony in a sworn statement before an executive session of *5 the Board of Governors of the Florida Bar on January 16, 1975.
"4. Mason repeated the same `rumor or discussion around the Commission' testimony under oath as a witness before the Florida House of Representatives Select Committee on Impeachment on February 25, 1975.
"5. Mason repeated the same `rumor or discussion around the Commission' testimony under oath when his deposition was taken in this cause on March 5, 1975.
"6. A number of witnesses testified concerning the question of whether there was such a rumor as Mason had described. None of them testified with Mason's certainty that there was a rumor between June 7, 1973 and July 16, 1973 that the Supreme Court of Florida had in fact voted to reverse the Commission, and further that Justice Boyd had been assigned to write the majority opinion. Some witnesses, such as Lewis W. Petteway who was Mason's collaborator, testified that there was no such rumor. Others such as William L. Weeks, General Counsel for the Commission, testified that the case was the subject of discussion, but not in detail which Mason attributed to the rumor.
"The parties have stipulated that if they were called to testify in this cause, Commissioners Bevis and Mayo would say that from June 7, 1973 to January 30, 1974 they did not hear the same rumor as that which Mason described.
"7. As previously mentioned, the Mason testimony regarding `rumor around the Commission' was his predicate for the circumstances of the first discussion he had with Justice Boyd. As such, it was a contrived `cover story' designed to ameliorate the impact of his ex parte contact (if not conversation) regarding Gulf Power Company v. Bevis. Surely there was speculation by interested counsel concerning the probable outcome of the case, and it appears that knowledgeable utilities counsel had concluded that the Commission would be reversed. There is no support in the record, however, for the proposition that there was either discussion or rumor `around the Commission' or anywhere else between June 7 and July 16, 1974 [1973] (the approximate date of the first Mason-Boyd contact) that the Supreme Court of Florida had voted to reverse the Commission's order in Gulf Power Company v. Bevis, and that Justice Boyd had been assigned to write the majority opinion."
To further understand the factual circumstances and the findings of the Referee, we have attached as an appendix copies of the correspondence between opposing counsel and the respondent.
For counts one, two, and three the Referee recommended a public reprimand and suspension for one year and thereafter until respondent shall establish rehabilitation as provided in Integration Rules 11.10(2) and (3), the discipline to be imposed concurrently. He further recommended that respondent should appear and personally hear the Court's judgment and that copies of the Referee's report and judgment be served by the respondent upon the chief executive officers of Gulf Telephone Company and St. Joseph Telephone and Telegraph Company.
The recommended discipline was accompanied by the following judicious and objective observations of the Referee:
"This case has been the focus of statewide attention which is entirely justified by a record replete with proof of a threat to the integrity of the judicial branch. Although that threat has passed without having inflicted lasting damage on substantive Florida jurisprudence, it has impaired the public confidence in the Bar and in constitutional processes.
"The Respondent has admitted without reservation that he communicated privately (ex parte) with Justices of the Supreme Court of Florida concerning a pending case in which he and his clients had an interest. He has admitted to *6 more than mere communication. He admits, and the proof shows, that he attempted to influence the Court's decision in a manner contrary to the Florida Appellate Rules, contrary to the traditions of the Bar, and contrary to what is the commonly accepted notion of equal and untampered justice. In fact, the Respondent's conduct is the antithesis of an independent judiciary which Chief Justice Charles Evans Hughes envisioned as weighing `evidence in scales with which prejudice has not tampered,' a judiciary which is a symbol of firmness `in resisting both solicitation and clamor.'
"The Respondent's conduct was so fundamentally wrong that there is scant precedent. The discipline to be invoked in this case, as is true with all disciplinary cases, must be determined upon its own record. The Florida Bar v. Scott, 197 So.2d 518, 520 (Fla. 1967).
"The determination of recommended discipline must in any event account for the welfare of the public which the Supreme Court of Florida has aptly described as a `silent litigant' in disciplinary cases. State [ex rel. Florida Bar] v. Ruskin, 126 So.2d 142, 143 (Fla. 1961). The ultimate judgment of discipline must be one which is:
"`... just to the public and, at the same time, fair to the accused attorney; it should be "designed to correct any anti-social tendency on the part of respondent as well as deter others who might tend to engage in like violations * * *."'" State [ex rel. Florida Bar] v. Bass, 106 So.2d 77, 78 (Fla. 1958) citing State ex rel. Florida Bar v. Murrell, 74 So.2d 221, 227 (Fla. 1954).
* * * * * *
"The record shows that the Respondent has held elective office, and that he is accomplished at political and legal persuasion. By no means was he shown to have been a weakminded or naive person. Although he was not a frequent practitioner in the Supreme Court of Florida, he appeared in that Court more than a few times. Moreover, his experience as a justice of the peace, and as a Commissioner of the Florida Public Service Commission exposed him to the routine of practice which is common to the Bar.
"The record also shows that the Respondent acted intentionally in all that he did. He chose to have discussions with the two justices, and he chose to prepare and deliver the memorandum. The evidence very clearly shows that he sought out Justice Dekle.
"There cannot be any good motive associated with Respondent's ex parte contacts with the Court, or with his memorandum. His claimed personal desire to `assist Justice Boyd' was translated into clearly improper conduct. His unspoken motive was to obtain an advantage over his adversaries.
"In the words of the Court  `there can be no temporizing with an offense the commission of which serves to destruct the judicial process.' Florida Bar v. Rayman, 238 So.2d 594, 598 (Fla. 1970) (dictum). The gravity of the proven offenses, and the Respondent's refusal to admit the plain fact that he actively concealed his wrongdoing negate the timeworn cliches that `he has learned his lesson,' or `that he is unlikely to do it again,' or that `he has already suffered degradation and humiliation in public proceedings.' These facts, his past good record, and prospects for the future serve only to avoid disbarment.
"Discipline and deterrence would be meaningless if the Respondent's activity would only be condemned, but not acted upon... ."
We fully agree with these comments by the Referee.
*7 We disagree, however, with the finding of guilt for count three. Standing alone, the evidence is not sufficient to sustain a separate disciplinary violation.
The facts and circumstances of these disciplinary charges are all directly related. In considering the appropriate discipline, the Referee recommended concurrent public reprimands and one-year suspensions which have the effect of one discipline for the entire incident. In our opinion, the uncontroverted facts admitted by the respondent justify the finding of guilt as to counts one and two and the punishment recommended by the Referee. We are unimpressed with respondent's argument that the punishment is too severe, particularly in view of respondent's willful failure to disclose the ex parte communications after being asked to do so by opposing counsel.
The Referee recommended that respondent pay the itemized costs totaling $8,479.41. The major portion of these costs is for pretrial depositions and out-of-pocket travel and other cost expenses for Bar counsel and the Referee. Neither of these individuals received compensation for there services. This is an unusual case which, because of its nature and publicity, required the appointment of a Referee and Bar counsel from outside the jurisdiction where the respondent practices. We find the unusual circumstances justify the costs in this action, however, because of its uniqueness it should not be considered a precedent for other disciplinary proceedings. We believe the respondent should be given adequate time to pay the amount of costs, and we reserve jurisdiction for the purpose of establishing an installment payment schedule if such should be necessary.
The discipline recommended by the Referee is approved, and the respondent is hereby publicly reprimanded and suspended from the practice of law for one year and thereafter until he proves rehabilitation in accordance with Integration Rule 11.10(2). The substantial impact of this public reprimand and suspension, together with the practical difficulty of reconvening this panel, convinces us that we should dispense with requiring the respondent to personally appear to hear this judgment. Respondent is directed to promptly serve a copy of this judgment upon the executive officers of Gulf Telephone Company and St. Joseph Telephone and Telegraph Company within twenty days from the date of this order. Execution for costs against respondent will be directed by subsequent order.
OVERTON, Acting C.J., HATCHETT, J., and KELLY, LENFESTEY, McCRARY, SMITH and WILLIS, Circuit Judges, concur.

APPENDIX
 December 17, 1973
Edwin L. Mason, Esquire
1030 E. Lafayette Street
Suite 112
Tallahassee, Florida 32301
 Re: Gulf Power Company v. Bevis, et al
 Supreme Court Docket No. 43,245
Dear Ed:
Saturday's St. Petersburg Times reports that you had a conversation with Justice Dekle on November 30 concerning the Gulf Power case. I *8 enclose a copy of that article. Since the article also refers to inquiries I made concerning the case, I want you, the other attorneys of record, and the Court to know the nature of those inquiries.
On two occasions when I was in Tallahassee during the past two months I stopped by the office of the clerk to inquire as to the progress of the case. On both occasions I asked personnel in the clerk's office as to the progress of the case, and as to whether there had been any disposition of the motion that had been filed after oral argument in order to complete and up-date the record. (You will recall that a motion was filed to provide the Court with a copy of the Public Service Commission's final determination in the income tax rule-making docket.) On both of my visits to the clerk's office, one of the assistant or deputy clerks reviewed a docket book and told me that the case and motion were still circulating among the justices. On both occasions I also saw Sid White and mentioned to him what information I had sought from his staff. I did not, however, ask him to expedite the case or to make any inquiries among the justices, and I did not ask that I be given any further or additional status report. On neither of those occasions, nor on any other, did I speak to any justice of the Court or submit anything in writing regarding the status, merits, progress, or anything else concerning this case.
 Very truly yours,
 (s) Arthur
 Arthur J. England, Jr.
 AJEJr/jt
 Enclosure
 Edwin L. Mason, Esquire -2- December 17, 1973
 Enc: Copy of St. Petersburg Times of 12/15/73,
 lead article page 1.
 cc: Chief Justice Vassar B. Carlton
 Justice B.K. Roberts
 Justice Richard W. Ervin
 Justice James C. Adkins, Jr.
 Justice Joseph A. Boyd
 Justice David L. McCain
 Justice Hal P. Dekle
 Hon. Sid J. White, Clerk Supreme Court
 Howell Ferguson, Esquire
 counsel for the Governor of Florida
 Honorable Robert Shevin
 Attorney General of Florida
 Bert Lane, Esquire
 counsel for Gulf Power Company
 Donald Alexander, Esquire
 counsel for the Florida Public Service Commission
 B. Kenneth Gatlin, Esquire
 counsel for Florida Power Corporation
*9
 Robert R. Feagin, Esquire
 counsel for Tampa Electric Company
 John W. McWhirter, Esquire
 counsel for Monsanto Company
 Jack Graff, Esquire
 counsel for American Cyanamid Co.
 Joseph C. Jacobs, Esquire
 counsel for Air Products & Chemicals, Inc.
 Major David M. Lewis, Jr.
 counsel for GSA and other U.S. executive agencies
 December 28, 1973
Edwin L. Mason, Esquire
1030 E. Lafayette Street
Suite 1030
Tallahassee, Florida 32301
 Re: Gulf Power Company v. Bevis
 Dear Ed:
 I recently wrote you regarding my contacts with the Florida
Supreme Court relative to the above case, after reading of your
November 30 conversation with Mr. Justice Dekle. I would like to
have your explanation of that and any other meeting, and if you
at any time furnished the Court or any justice with written
material not on the record, I would like to have a copy of those
documents. Surely in light of Mr. Justice Dekle's acknowledgment
of the meeting and the apparent verification of the memorandum
to Mr. Justice McCain, all counsel of record are entitled to an
explanation and full disclosure from you.
 Sincerely yours,
 Arthur J. England, Jr.
AJEJr/jt
 January 7, 1974
Arthur J. England, Jr., Esq.
Paul & Thomson
1300 First National Bank Building
Miami, Florida 33131
 Re: Gulf Power Company v. Bevis
 Dear Art:
 I, too, saw the piece in the St. Petersburg paper about my
having spoken to Mr. Justice Dekle about a case pending before
the Supreme Court. The article as I recall contained his
explanation of the matter. Your present letter to me would
indicate that you do not believe the Justice's
*10
explanation. Perhaps you should discuss the matter with him. In
any event, I am forwarding your letter to him, together with my
reply, for his information.
 Sincerely,
 (s) Ed
 EDWIN L. MASON
ELM:cp
cc: Mr. Justice Dekle (with enclosure)
 January 22, 1974
Edwin L. Mason, Esquire
Mason & Erwin
1030 East LaFayette Street
Suite 12
Tallahassee, Florida 32301
 Re: Gulf Power Company v. Bevis et al
 Dear Ed:
 I received your letter of January 7, 1974. Apparently you do
not feel that it is important to offer the other attorneys in
this case an explanation of your ex parte communications with
Mr. Justice Dekle. I am distressed at your lack of sensitivity
to the ethical considerations involved in such discussions, and
I would have thought you would welcome the opportunity to
clarify or explain your behaviour. Since you read the Times
article you must know that Justice Dekle's explanation does not
fully comport with the language of the memorandum to Justice
McCain. I regret that you are unwilling to make any attempt at
clarification.
 Sincerely yours,
 Arthur J. England, Jr.
AJEJr/jt

ORDER ESTABLISHING EFFECTIVE DATE OF SUSPENSION
On consideration of the Petition to Establish Date of Commencement of Suspension or, in Alternative, to Convert Suspension to Probation filed by Edwin L. Mason and Response thereto, it is ordered that said petition is denied, and
Stipulation having been filed by attorneys for the parties, the effective date of suspension shall be May 26, 1976.