PER CURIAM.
We have for review a referee’s report recommending that Respondent Howard Michael Scheinberg be found guilty of professional misconduct in violation of the Rules Regulating the Florida Bar (Bar Rules) and suspended for one year. Respondent Scheinberg has filed a petition for review of the report. We have jurisdiction. See art. V, § 15, Fla. Const. As discussed below, we approve the referee’s findings of fact and recommendation as to guilt. However, we disapprove the referee’s recommended discipline. We conclude that Scheinberg’s serious misconduct in this case warrants a two-year suspension from the practice of law in Florida.
FACTS
In September 2011, The Florida Bar filed a complaint against Scheinberg, alleging that he engaged in misconduct in violation of Bar Rule 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice). A referee was appointed to consider the matter. Following the referee’s appointment, Scheinberg filed a motion to dismiss the complaint, which alleged that the Bar (or one of its agents) breached confidentiality in violation of Bar Rule 3-7.1 (Confidentiality).[1] The referee entered an order denying the motion. Thereafter, the referee held a hearing in the case; she has submitted a Report of Referee for the Court’s review, in which she makes the following findings and recommendations.
In 2007, Scheinberg was the lead prosecutor in State of Florida v. Omar Loureiro, a first-degree capital murder case in which the State was seeking the death penalty. Former Judge Ana Gardiner was the presiding judge in the case. On March 27, 2007, the jury returned a verdict finding Loureiro guilty of first-degree murder. Subsequently, on May 20, 2007, the jury recommended the death penalty; on August 24, 2007, former Judge Gardiner imposed the death penalty. During the period of time from March 23, 2007, four days *317 before the jury returned its guilty verdict in Loureiro, to August 24, 2007, the day that former Judge Gardiner imposed the death penalty, Scheinberg and Gardiner engaged in substantial personal communications by phone or text message. Specifically, Scheinberg has admitted that he and former Judge Gardiner exchanged 949 cell phone calls and 471 text messages during that period. Scheinberg did not disclose these communications to the attorney representing Loureiro.
Following Loureiro’s conviction and sentence, his attorneys initiated a direct appeal. However, when the communications between Scheinberg and former Judge Gardiner were discovered, the Broward State Attorney’s office agreed to a new trial in the case. The referee found: “The undisclosed conduct between former Judge Ana Gardiner and the respondent, contributed to the decision by the State of Florida, through its Broward State Attorney to agree to a new trial in State of Florida v. Omar Loureiro to dispel any public misconception that there was any denial of due process.”
Based on these factual findings, the referee recommends that Scheinberg be found guilty of violating Bar Rule 4 — 8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice). The referee observed: “The undisclosed communications between the judge and Respondent prejudiced the system. The communication should have been revealed to opposing counsel and failing to make such a disclosure was also prejudicial to the administration of justice.”
The referee found three aggravating factors in this case: a pattern of misconduct; multiple offenses; and substantial experience in the practice of law. The referee also found four mitigating factors: the absence of a prior disciplinary record; full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings; good character or reputation; and remorse.
As to the sanction, the referee recommends that Scheinberg be suspended from the practice of law for one year. The referee also awarded costs to The Florida Bar, in the amount of $3,881.96.
As noted, Scheinberg has filed a petition for review of the referee’s report, challenging the referee’s recommendation as to guilt, as well as the recommended sanction. Scheinberg also challenges the referee’s denial of his motion to dismiss. However, we find, without further discussion, that the referee did not abuse her discretion in denying Scheinberg’s motion.
ANALYSIS
The Referee’s Recommendation as to Guilt
While the facts in this case are not disputed, Scheinberg contends that such facts do not support the referee’s recommendation that he be found guilty of violating Bar Rule 4-8.4(d). In reviewing a referee’s recommendations as to guilt, the Court has repeatedly stated that the referee’s factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Shoureas, 913 So.2d 554, 557-58 (Fla.2005).
Rule 4 — 8.4(d) provides that a lawyer shall not “engage in conduct in connection with the practice of law that is prejudicial to the administration of justice.” Here, the referee found that Scheinberg’s extensive personal communications with former Judge Gardiner, which occurred while Gardiner was the presiding judge in the Loureiro capital murder case, ultimately contributed to the State’s decision to retry the case. Thus, the referee found that *318 Scheinberg’s conduct was prejudicial to the administration of justice, in violation of rule 4 — 8.4(d). We agree.
Although the Court has long held that ex parte communications between a lawyer and presiding judge are “dangerous and destructive of the impartiality of the judiciary,” see Rose v. State, 601 So.2d 1181, 1183 (Fla.1992), we have not considered a case like the one presented here, where the communications at issue did not pertain to the pending case. Scheinberg and Gardiner engaged in a substantial number of personal communications, including more than nine hundred personal cell phone calls and more than four hundred text messages in a five-month period. It is not disputed that their conversations were personal in nature and did not pertain to the Loureiro case. However, it is also clear that their communications were not casual or administrative, such as the type of communication that might occur when a lawyer and judge pass each other in the hallway or when they serve on the same committees. Their extensive communications, once discovered, created an appearance of impropriety in the case. We find guidance in In re Adams, 932 So.2d 1025 (Fla.2006), in which we held that a judge engaged in misconduct when he became involved in a romantic relationship with an attorney who appeared before him, and continued to preside over matters in which the attorney appeared as counsel. In Adams, we stated:
Even in the absence of evidence that a romantic relationship with an attorney practicing in a judge’s court has influenced the judge’s judgment, the judge’s authority necessarily suffers. First, the intimate relationship itself is contrary to the judge’s role of maintaining detached neutrality as to the litigants and lawyers who appear in his or her courtroom. Second, in continuing to preside over cases in which the lawyer appears during the relationship, the judge necessarily depletes the single most important source of his or her authority — the perception of the legal community and public that the judge is absolutely impartial in deciding cases.
Id. at 1027. In this case, we conclude that Scheinberg’s numerous personal communications with former Judge Gardiner similarly served to damage the perception of judicial impartiality.
Moreover, it is clear that the communications between Scheinberg and former Judge Gardiner were a significant reason that the State agreed to retry the Loureiro case. Scheinberg’s witness during the final hearing before the referee testified that, but for the contact between Sehein-berg and former Judge Gardiner, there would have been no need for a new trial. Accordingly, we hold that the referee’s factual findings are sufficient to support her recommendation that Scheinberg be found guilty of conduct in connection with the practice of law that was prejudicial to the administration of justice, in violation of Bar Rule 4-8.4(d).
The Referee’s Recommended Sanction
We turn next to the referee’s recommended sanction, a one-year suspension. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
*319 Initially, we address the referee’s findings in aggravation and mitigation. Scheinberg challenges the referee’s findings in aggravation and mitigation. In particular, he argues that the referee should have considered additional mitigating factors — the absence of a dishonest or selfish motive; personal or emotional problems resulting from Scheinberg’s divorce; good faith efforts to rectify the consequences of his misconduct; and the Bar’s delay in prosecuting this case — and should have afforded greater weight to the four mitigating factors discussed in the report (the absencé of a prior disciplinary record, a cooperative attitude, good character, and remorse). We have stated: “Like other factual findings, a referee’s findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record. A referee’s failure to find that an aggravating factor or mitigating factor applies is due the same deference.” Fla. Bar v. Germain, 957 So.2d 613, 621 (Fla.2007) (citation omitted). Because we conclude that the referee’s findings in aggravation and mitigation are not clearly erroneous, we approve those findings in full. Although Scheinberg did present compelling evidence to show his good character and reputation in the legal community, such evidence does not outweigh the seriousness of his misconduct in this case.
Next, as to the referee’s recommended one-year suspension, Scheinberg urges the Court to disapprove the suspension and instead impose a lesser sanction. However, we believe that the serious nature of his misconduct, and the harm it caused to the administration of justice in the Loureiro case, warrants a severe sanction. Thus, we disapprove the referee’s recommended discipline, and instead suspend Scheinberg from the practice of law for two years.
As we noted above, there is little case law from this Court that addresses the situation presented in this case, where an attorney engages in extensive personal communications with a presiding judge in a capital case, without disclosing those communications to the opposing party. The Report of Referee cites Florida Bar v. Mason, 334 So.2d 1 (Fla.1976), in which the Court suspended an attorney for one year for egregious ex parte communications with Justices of the Florida Supreme Court concerning a pending case. In Mason, the Court noted that the ex parte communications at issue were “fundamentally wrong,” and that “there can be no temporizing with an offense the commission of which serves to destruct the judicial process.” Id. at 6.
Here, there is no dispute that the communications between Scheinberg and former Judge Gardiner did not concern the Loureiro case. Nonetheless, we do find guidance in Mason, in that Scheinberg’s conduct similarly created an appearance of impropriety and caused harm to the judicial process. Scheinberg and Gardiner engaged in a substantial number of personal communications that were not disclosed to the opposing party and his attorney. Moreover, this conduct occurred in the context of a capital first-degree murder case where the judge had to rule on motions made by and against the respondent and where the judge could, and did, impose the ultimate sentence of death. The communications between Scheinberg and former Judge Gardiner led to an investigation and, ultimately, caused the Loureiro case to be retried, a process which consumed court resources, as well as the resources of opposing counsel. Given the seriousness of Scheinberg’s misconduct and the harm it caused to the administration of justice in the Loureiro case, together with the aggravating and mitigating *320 factors found by the referee, we hold that a two-year suspension is the appropriate discipline. Thus, we disapprove the referee’s recommended sanction, and instead suspend Scheinberg for two years. ‘
CONCLUSION
Accordingly, Howard Michael Schein-berg is hereby suspended from the practice of law in Florida for two years. The suspension will be effective thirty days from the filing of this opinion so that Scheinberg can close out his practice and protect the interests of existing clients. If Scheinberg notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Scheinberg shall fully comply with Rule Regulating the Florida Bar 3 — 5.1(h). Further, Scheinberg shall accept no new business from the date this opinion is filed until he is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Howard Michael Scheinberg in the amount of $3,881.96, for which sum let execution issue.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. Bar Rule 3-7.1(a) provides:
All matters including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided herein. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules.