908 So.2d 405 (2005)
THE FLORIDA BAR, Complainant,
v.
Steven Edward COHEN, Respondent.
No. SC03-2041.
Supreme Court of Florida.
July 7, 2005.
*407 John F. Harkness, Jr., Executive Director and John Anthony Boggs, Staff Counsel, The Florida Bar, Tallahassee, FL, Adria E. Quintela, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, for Complainant.
Hal B. Anderson of Billing, Cochran, Heath, Lyles, Mauro and Anderson, P.A., Fort Lauderdale, FL and Daniel S. Mandel of Mandel, Weisman, Brodie, Griffin and Heimberg, P.A., Boca Raton, FL, for Respondent.
PER CURIAM.
Attorney Steven Edward Cohen contests a referee's report recommending that he be disbarred from the practice of law for ethical misconduct. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons explained below, we approve the referee's findings of fact and recommendations as to guilt, as well as the recommended discipline. We hereby disbar Cohen from the practice of law.

I. BACKGROUND
The Florida Bar filed a complaint against Cohen concerning his 2003 federal conviction for conspiracy. After a final hearing, the referee issued a report making the following findings and recommendations:
On April 15, 2003, the Office of the United States Attorney for the Southern District of Florida filed an Information charging Cohen with the felony of conspiring to structure financial transactions with financial institutions to avoid federal requirements to report transfers of $10,000 or more, in violation of Title 31 of the United States Code. After waiving indictment, Cohen and his criminal defense attorney signed a Plea Agreement in which Cohen agreed to plead guilty to a violation of Title 18, section 371 of the United States Code, the federal general conspiracy statute. The Plea Agreement noted that the amount involved, which Cohen had personally received and concealed, was about $640,000. The agreement also provided that as part of his required performance Cohen or his representative would deliver that sum to the United States Drug Enforcement Agency (DEA). The agreement stipulated that currency in this amount was then in Cohen's custody or control, who had received it from a co-conspirator named Taylor.
The referee found that Cohen's co-conspirator was a major importer of marijuana and, to a lesser degree, a dealer of cocaine. Although Taylor maintained a chain of businesses, which included fireworks retail stores, these were cash-heavy businesses through which Taylor laundered millions of dollars, and drug importation was Taylor's true livelihood. The referee found that Taylor would give cash to Cohen and others for safekeeping in bundles of $10,000 wrapped in plastic. Cohen kept this cash in a safe deposit box in a bank located in the office building where he practiced law. Taylor told a DEA agent that Cohen was very much aware this was drug money.
*408 Under the Plea Agreement, the government agreed to recommend that the sentencing court find that Cohen did not know the cash given to him were proceeds of unlawful activity. The government would also recommend a sentence at the low end of the sentencing guidelines range. The referee found that the government was willing to give Cohen favorable treatment because as part of the agreement, immediately upon the federal court's acceptance of the plea and imposition of sentence, Cohen would deliver the $640,000 cash to the government. The referee noted that at the time of his arrest, Cohen knew this money lay in a floor safe at the home of his law partner. The referee found that, instead of voluntarily handing the money over to the government, Cohen used it as a "bargaining chip" to negotiate a favorable plea. The referee noted that the maximum sentence for the crime to which Cohen pled was five years' incarceration followed by three years' supervised release, plus a fine of up to $250,000. Cohen received four months' incarceration, followed by two years of supervised release, beginning with four months of electronic house arrest, and a $20,000 fine. The referee found that these terms were the lightest that could be imposed under the guidelines.
Cohen subsequently informed this Court of his conviction and consented to a felony suspension. We granted the Bar's uncontested Petition for Entry of Order of Suspension and suspended Cohen effective, nunc pro tunc, June 1, 2003. See Fla. Bar v. Cohen, No. SC03-1174, 857 So.2d 197 (Fla. Sept. 11, 2003) (unpublished order).
Based on these facts, the referee recommended that Cohen be found guilty of violating Rules Regulating the Florida Bar 3-4.3 (stating that the commission of an act that is unlawful or contrary to honesty and justice may constitute cause for discipline), 4-8.1(a) (stating that a lawyer in connection with a disciplinary matter shall not knowingly make a false statement of material fact), 4-8.4(a) (stating that a lawyer shall not violate the Rules of Professional Conduct), 4-8.4(b) (stating that a lawyer shall not commit a criminal act that reflects on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects), and 4-8.4(d) (stating that a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).
In considering the appropriate discipline for Cohen's misconduct, the referee found the following aggravating factors: (1) a dishonest or selfish motive, (2) a pattern of misconduct, (3) multiple offenses, (4) submission of false evidence, false statements, or other deceptive practices during the disciplinary process, (5) a refusal to acknowledge the wrongful nature of his conduct, (6) substantial experience in the practice of law, and (7) indifference to making restitution.
Regarding the finding that Cohen made false statements during the disciplinary proceeding, the referee stated that it "insult[ed] credulity" to suggest that a sophisticated lawyer and real estate investor would believe that over half of a million dollars in cash delivered to him in $10,000 bundles, which he initially stored in a safety deposit box and ultimately transferred to a floor safe, was income from legitimate businesses. The referee noted that the federal presentence investigation report prepared in Cohen's case and the testimony of a DEA agent indicated that Cohen knew that the proceeds were from drug money. Nevertheless, Cohen insisted that he had no idea that these vast sums of money were the fruit of drug dealing, thereby refusing to acknowledge the *409 wrongful nature of his conduct.[1]
As further evidence of Cohen's dishonesty, the referee noted that at the disciplinary hearing, Cohen insisted he was the only individual who had helped Taylor who was charged with criminal activity. Nevertheless, the referee found that Cohen's criminal defense counsel told the federal sentencing court that a number of individuals pled guilty to holding Taylor's money. In finding that Cohen expressed indifference to making restitution, the referee noted that Cohen refused to turn over the money until the federal court accepted his plea bargain.
In mitigation, the referee found that Cohen had no disciplinary history. The referee also noted that two witnesses testified as to Cohen's good character. These witnesses, one of whom is Cohen's brother-in-law, and both of whom were friends of Cohen's and co-investors with Cohen, Taylor, and Cohen's law partner, testified that Cohen had done a significant amount of pro bono work. Finally, the referee noted other penalties and sanctions had been imposed on Cohen for his criminal actions; however, the referee found that Cohen's brief imprisonment and relatively minimal penalty did not make this a particularly compelling mitigator.
After considering these factors, the referee recommended that Cohen be disbarred for at least five years, that he not be allowed to seek readmission until his civil rights are restored, and that he be required to pay the Bar's costs. Cohen now challenges the referee's findings of fact and recommended discipline.

II. ANALYSIS
Cohen essentially raises two issues. First, he argues that the referee improperly considered evidence about the circumstances surrounding his federal conviction. Second, he argues that the referee's recommended discipline of disbarment is too harsh. We address each argument in turn.

A. The Referee's Consideration of the Circumstances Surrounding the Conviction
Cohen first argues that the referee improperly assessed the evidence surrounding his conviction and, based on this assessment, made factual determinations contrary to those in Cohen's federal plea agreement. Cohen argues that the referee was bound by the stipulation in his plea agreement that he did not know the funds received from Taylor were proceeds of illegal activity. We agree with the Bar, however, that in determining the appropriate discipline, the referee could consider aggravating factors, including Cohen's knowledge of the illicit nature of the cash he concealed for Taylor.
Although a referee may not "go behind" a conviction to determine the attorney's guilt, see Fla. Bar v. Kandekore, 766 So.2d 1004, 1007 (Fla.2000), a referee may consider evidence concerning the circumstances behind a conviction in determining the recommended discipline. In State ex rel. Fla. Bar v. Evans, 94 So.2d 730, 735 (Fla.1957) (emphasis omitted), the Court explained why attorneys may introduce such evidence in disciplinary proceedings:
[I]n a disbarment proceeding based on conviction of a crime, the proof of conviction and an adjudication of guilt are sufficient to establish a prima facie case for disciplinary action. Due process, however, requires that the accused lawyer shall be given full opportunity to *410 explain the circumstances and otherwise offer testimony in excuse or in mitigation of the penalty.
. . . .
We are of the view that when a lawyer is found guilty of a felony the adjudication of guilt is sufficient to justify setting in motion the disciplinary process. It may not, of itself, always prove him unfit to practice law. However, when not adequately controverted or explained after a full and fair hearing, the judgment of guilt may then constitute the basis for disciplinary action.
Thus, the Court has allowed attorneys facing Bar discipline to introduce evidence of circumstances behind their convictions to establish mitigation in favor of less severe discipline. For example, in Florida Bar v. Pavlick, 504 So.2d 1231, 1232 (Fla. 1987), attorney Pavlick was indicted for conspiracy to import marijuana, conspiracy to possess with intent to distribute, and distribution of marijuana. Pavlick ultimately entered an Alford[2] plea to the crime of being an accessory after the fact to the concealment of a felony. 504 So.2d at 1232. During the subsequent Bar disciplinary proceedings, Pavlick maintained that he was innocent of the crime to which he pled, and he only entered the plea because his obligations to his family prevented him from risking the imposition of a more severe punishment should he be convicted at trial. Id. at 1233. Citing Evans, the Court held that the referee properly considered Pavlick's testimony and evidence regarding the underlying case, as well as his reasons for entering the plea, to mitigate the recommended penalty. Id. at 1234.
Similarly, in past cases the Bar has been permitted to present evidence of the underlying case to support assertions that more severe discipline is warranted due to aggravating circumstances. In Florida Bar v. Jahn, 509 So.2d 285, 286 (Fla.1987), attorney Jahn pled nolo contendere to the felonies of delivery of cocaine to a minor and possession of cocaine. Jahn's convictions were based on two separate incidents, one in which he injected himself and a nineteen-year-old female with cocaine, and the other in which he engaged in the same conduct with a fifteen-year-old female. Id. At the disciplinary hearing, in an effort to show that Jahn's behavior was even more reprehensible than his convictions indicated, the Bar presented the females' testimony that Jahn had injected them against their will. Id. The referee ultimately concluded that the females' testimony was highly unreliable and that their cocaine use was consensual. Id. On review before the Court, the Bar argued that, by not accepting the testimony of the females as credible, the referee was attempting to refute the facts underlying Jahn's plea, thereby going behind his convictions. Id. The Court disagreed, noting that the referee specifically found Jahn admitted the felony convictions and accepted responsibility for his conduct. Id. The Court found that the referee's decision to accord the females' testimony little weight did not constitute an improper attempt to refute the convictions. Id. The Court ultimately approved the referee's finding that the females' cocaine use was consensual. Id.
In this case, the referee did not consider evidence concerning Cohen's knowledge of the illicit nature of the concealed money to find Cohen guilty of a more severe crime. In fact, the referee accepted Cohen's plea agreement and conviction as conclusive proof that Cohen was guilty of the underlying crime and, therefore, guilty of violating the above-mentioned rules of professional *411 conduct. See also R. Regulating Fla. Bar 3-7.2(i)(3) (providing that "where the underlying criminal charges constitute felony charges, determinations or judgments of guilt shall . . . constitute conclusive proof of the criminal offense(s) charged"). Instead, the referee properly considered the circumstances surrounding the crime to determine potential aggravating and mitigating factors for purposes of discipline.
We also approve of the referee's use of common sense and logic in making his factual findings based on the evidence presented. We agree that it strains credulity that an attorney would believe that $640,000 in cash delivered in plastic-wrapped $10,000 bundles for storage in a safety deposit box was legitimately acquired. Cf. Fla. Bar v. Massari, 832 So.2d 701, 703-05 (Fla.2002) (approving referee's finding that client's signature on a document was a forgery where referee found "it belie[d] common sense that [the client] would transpose his signature onto [the document] rather than sign the document"). Even though a respondent attorney may have stipulated with another entity about certain facts, a referee assessing the credibility of a respondent attorney's testimony at a disciplinary proceeding may draw his or her own conclusions. Nor is the Bar, which was not a party to the other proceeding, precluded from presenting evidence of such underlying circumstances to aid the referee in determining the appropriate discipline.

B. The Appropriate Discipline
Cohen next contests the recommended discipline. Although a referee's recommendation is persuasive, we do not grant it the same deference as we do to guilt recommendations because the ultimate responsibility for determining the appropriate sanction rests with this Court. Generally speaking, however, we will not second-guess a referee's recommended discipline as long as it has a reasonable basis in existing caselaw or in the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
When an attorney has been convicted of a felony, the presumptive discipline is disbarment. See Fla. Bar v. Bustamante, 662 So.2d 687, 690 (Fla.1995); see also Fla. Stds. Imposing Law. Sanc. 5.11(a) & (e). Further, standard 5.11(f) provides that disbarment is appropriate when an attorney engages in intentional conduct that involves dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice law. Under the statute to which Cohen pled guilty, Cohen knowingly conspired with Taylor over a period of about eight years to structure a large amount of money (delivered in small increments) to help Taylor avoid federal reporting requirements. Conspiring to evade the proper functioning of the legal system has been found to constitute clearly dishonest conduct that adversely reflects on a lawyer's fitness to practice law. See, e.g., Fla. Bar v. Cueto, 834 So.2d 152, 156 (Fla.2002) (finding that an attorney who knowingly engaged in illegal kickback scheme acted with dishonesty towards the very system he was sworn to uphold); In re DeRose, 55 P.3d 126, 131 (Colo.2002) (holding that an attorney convicted of aiding and abetting in addition to structuring funds for the purpose of evading federal reporting requirements engaged in criminal acts that reflected adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects). Cohen's apparent knowledge that this money was the product of illegal activities further enhances the egregiousness of his actions. Therefore, under this Court's caselaw and the *412 standards, we find that the presumed discipline for Cohen's misconduct is disbarment.
Cohen's presentation of mitigating evidence (i.e., his good reputation, his four-month incarceration, his lack of a disciplinary history, his consent to felony suspension, and his community service) was far from sufficient to overcome the presumption of disbarment for his serious misconduct in conspiring to evade federal laws with the apparent knowledge that the money he concealed was the product of illegal activities. See Fla. Bar v. McKeever, 766 So.2d 992, 994 (Fla.2000) (finding that attorney bears the burden of overcoming presumed discipline).[3] Accordingly, we approve the referee's recommended discipline.

CONCLUSION
Steven Edward Cohen is hereby disbarred from the practice of law effective, nunc pro tunc, June 1, 2003, the date of Cohen's emergency suspension. See Fla. Bar v. Cohen, No. SC03-1174, 857 So.2d 197 (Fla. Sept. 11, 2003) (unpublished order). Because Cohen has been suspended since June 1, 2003, it is unnecessary to provide Cohen with thirty days to close out his practice to protect the interests of existing clients. Cohen shall not be eligible to reapply for admission to The Florida Bar until his civil rights have been restored. See Fla. Bar v. Moody, 577 So.2d 1317, 1318 (Fla.1991).
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Steven Edward Cohen in the amount of $2,617.58, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Cohen's position was that he agreed to structure the money, not because he knew it was drug money, but because he wanted to help Taylor hide the money from his fiancée.
[2] See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[3] Even if Cohen did not know of the illicit nature of the proceeds, his federal conviction for general conspiracy alone would warrant disbarment. See Fla. Bar v. Grief, 701 So.2d 555, 557 n. 1 (Fla.1997) (disbarring an attorney who was convicted of a federal felony charge of conspiracy to defraud the government by filing false immigration documents despite significant mitigation, which included (1) no disciplinary history, (2) full and free disclosure to the disciplinary board, (3) good reputation, (4) remorse and acceptance of responsibility, and (5) the fact that the evidence did not show that the attorney was motivated primarily by profit); Fla. Bar v. Isis, 552 So.2d 912, 913 (Fla.1989) (disbarring attorney who pled no contest to a charge of conspiracy to commit organized fraud); see also Fla. Bar v. Horne, 527 So.2d 816, 818 (Fla.1988) (disbarring attorney convicted of conspiring with client to impede the collection of income taxes); In re Birdwell, 20 S.W.3d 685, 689-90 (Tex.2000) (disbarring attorney for conspiracy to defraud the United States by impeding the lawful functions of the IRS in assessment and collection of federal taxes); In re Meisnere, 471 A.2d 269, 270-71 (D.C.1984) (holding that conspiracy to defraud IRS warrants disbarment); In re Klepak, 250 Ga. 892, 302 S.E.2d 356, 358 (1983) (disbarring attorney convicted of violation of 18 U.S.C. § 371).