# Supreme Court of Florida

No. SC2021-1469

**THE FLORIDA BAR,**
Complainant,

vs.

**MIGUEL FERNANDO MIRABAL,**
Respondent.

July 11, 2024

PER CURIAM.

We have for review a referee's report recommending that Respondent, Miguel Fernando Mirabal, be found guilty of professional misconduct in violation of the Rules Regulating The Florida Bar (rules) for repeatedly certifying as correct campaign finance reports he knew were false, making material misrepresentations and omissions in his application to fill a judicial vacancy with the Judicial Nominating Commission (JNC), and for his misconduct during these disciplinary proceedings.[1] As a

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

sanction for his misconduct, the referee recommends that we disbar Mirabal from the practice of law in Florida.

Mirabal challenges the referee's report. He admits that he made "mistakes" in his pursuit of judicial office but maintains that his conduct was entirely unintentional. He also argues that disbarment is too harsh a sanction in this case, and that if any disciplinary action is warranted against him, we should impose no more than a lengthy suspension. We reject these arguments and approve the referee's factual findings and recommendations as to guilt, except for the recommendations of guilt as to rules 4-8.1(a), 4-8.2(b), and Canon 7 of the Code of Judicial Conduct, which we disapprove. We also approve the referee's recommended sanction and disbar Mirabal from the practice of law in Florida.

## I.

## Campaign Finance Reports

In 2017, Mirabal filed to run for election to a county court judgeship in Miami-Dade County. He initially designated himself the campaign's treasurer, but later designated himself deputy treasurer on March 9, 2018, after he hired Jhanet Garcia, a

certified public accountant who handled accounting matters for his family, to serve as the campaign's treasurer.

As a candidate for elected office, Mirabal was required to regularly file campaign finance reports with the Miami-Dade County Elections Department. He was required as the candidate, and as the treasurer of his campaign through March 9, 2018, to certify the correctness of each report filed. *See* § 106.07(5), Fla. Stat. (2017). Mirabal personally reviewed and certified each of his campaign's monthly reports using his own unique PIN signature code.

Though he certified each report as correct, the referee found that Mirabal's campaign finance reports were riddled with material errors about his campaign's finances, many of which were likely timed to be politically beneficial to his campaign. The most significant reporting errors occurred during the candidate qualifying period, where, just before switching races from group 18 to group 43, Mirabal made a series of amendments to his campaign's reports that made it appear to the public and others in the race as though he had a larger campaign account balance and was a much better funded candidate than he actually was. After the qualifying period ended, and when a smaller campaign account balance was less

detrimental to his campaign, Mirabal amended the reports to decrease the balance of his campaign account.

For example, on the evening of March 8, 2018, just before he switched races from group 18 to group 43, Mirabal amended his January 2018 report to add $196.80 in collected cash and checks, and reported the campaign cumulative total as $46,278.26. Forty-three minutes later, he amended his November 2017 report to re-report cash, check, and loan amounts in the amount of $5,551.46, essentially doubling those amounts for a campaign cumulative total of $51,829.72. Then, thirteen minutes later, Mirabal amended his February 2018 report to add $3,000.00 in in-kind contributions and to re-report a $20,000.00 loan to himself, which like the other re-reported amounts, doubled the actual amount of the loan. At this point, Mirabal's cumulative campaign total was $71,829.72, which did not match the amount actually in his campaign account.

Then, minutes after the qualifying period ended at noon on May 3, 2018, Mirabal amended his November 2017 report to delete the doubled $3,130.00 in cash and checks, and to delete a $3,421.46 purported loan from himself, lowering the cumulative total of the campaign account to $69,278.26. Ten minutes later,

- 4 -

Mirabal amended the January 2018 report to delete a $10,000.00 purported loan from himself, lowering the cumulative total of the campaign account to $59,278.46. In deleting the loan amount from the report rather than amending it or placing it on another report, the referee found that Mirabal basically recognized that the loan did not actually occur and that he had no basis to record it. And finally, sixty-two minutes later, Mirabal amended his February 2018 report to delete the doubled $20,000.00 purported loan from himself, lowering the cumulative total of the campaign account to $39,278.26.

Based on the numerous material errors in Mirabal's monthly campaign finance reports, the Florida Elections Commission (FEC), in a consent order dated February 26, 2019, found Mirabal in violation of section 106.07(5). The FEC ordered Mirabal to pay a $2,000.00 fine. When asked at the final hearing to explain the high volume of material errors in his campaign reports, Mirabal stated that the errors were the result of him mistakenly filling out forms with which he was unfamiliar. The referee found Mirabal's explanation untruthful. He noted that Mirabal, who has served as the closing agent on numerous real estate transactions, was not

unfamiliar with reporting financial matters on forms and with ensuring the accuracy and completeness of such forms.

Mirabal also claimed that he had until the end of the campaign to amend and correct his financial reports. The referee rejected this argument, finding that that was true for errors he may not have been aware of until the end of the campaign. But Mirabal was well aware of the errors in his campaign's finance reports when his campaign was ongoing and he had a duty to correct the reported balances before certifying in subsequent reports that the reported total was correct.

The referee ultimately found that the errors in Mirabal's campaign finance reports were too numerous and far too politically advantageous to be a mere accident. He concluded that Mirabal knowingly and repeatedly certified the over-inflated numbers in his campaign finance reports as accurate, allowing them to go uncorrected during the period when other candidates could enter the group 43 race for judicial office. The referee, thus, recommends that Mirabal be found guilty of violating rule 4-8.4(c) ("A lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . .").

## The 2019 JNC Application

In April 2019, Mirabal filed an application with the JNC seeking appointment to a county court judgeship. He certified at the end of his JNC application that he had "read the foregoing questions carefully and ha[d] answered them truthfully, fully and completely."

### Question 38

Question 38 of the JNC application asked whether Mirabal had "ever been a party to a lawsuit either as a plaintiff or as a defendant." If the answer was in the affirmative, the application directed Mirabal to identify the jurisdiction where the lawsuit was filed, the style of the case, the case number, the nature of the lawsuit, whether he was a plaintiff or defendant, and the case's disposition.

In answering question 38, Mirabal failed to list six lawsuits in which he was a party. Mirabal claimed that he filled out the application from memory, and that the cases were negligently omitted from his application. The referee found Mirabal's explanation that he simply "forgot" about the six cases was not credible, particularly given that the omitted lawsuits contained

negative comments and findings about Mirabal that would cause the JNC to look unfavorably on his application.

For example, in *Federal Deposit Insurance Corp., as Receiver for Indymac Bank, FSB v. Miguel F. Mirabal & Global Title, LLC*, Mirabal was accused of fraud and breach of contract after he purportedly failed to follow the lender's instructions while acting as a closing agent. Mirabal ultimately settled the case and agreed to testify against others involved in the fraud. The referee found that it was "impossible to believe" that Mirabal would simply forget a lawsuit of this nature and result.

Another example is *Miguel F. Mirabal v. Bank of America Corp.*, a lawsuit Mirabal initiated in Miami-Dade circuit court. Though he disclosed the case's existence on his JNC application, Mirabal misrepresented its disposition. He claimed:

> This was my lawsuit as Plaintiff for a property/mortgage against Bank of America and Countrywide Home Loans, after I detected irregularities with the loan. After several years of litigation we finally settled in June 2016 with a short sale of the property.

However, Mirabal failed to disclose that the case was removed to federal court, where his claims were dismissed with prejudice for misrepresentations of fact and failure to state a claim. The case

stemmed from Mirabal's attempt to avert foreclosure proceedings on property he owned. In July 2008, Mirabal drafted and executed a "Quit Claim Deed in Lieu of Foreclosure" that stated it was prepared by the Bank of New York. Unaware of Mirabal's actions, the Bank of New York recorded a lis pendens against the property in October 2008. Mirabal then recorded the quit claim deed he prepared in December 2008, and he initiated the circuit court action against the bank and its successor to quiet title to the property based on the quit claim deed.

After its removal to federal court, Mirabal's lawsuit was dismissed with prejudice. The federal court found that the various versions of Mirabal's complaint contradicted each other and that the exhibits he relied on directly contradicted the allegations in the complaints. It further found that Mirabal made false allegations in his complaint and that he relied on a false document that he clearly prepared himself.

The referee found the federal case would likely have raised concerns amongst the JNC members as to Mirabal's fitness to hold a judicial office. He found that Mirabal intentionally omitted the federal case from his application, as he could not have simply

forgotten about the case, given the negative findings in the federal court's order and the fact that the order was issued just three years before he submitted his JNC application. The referee, thus, recommends that Respondent be found guilty of violating rule 4-8.4(c).

*Question 39*

Question 39 of the JNC application asked whether a "finding of probable cause or other citation [has been] issued against you or are you presently under investigation for a breach of ethics or unprofessional conduct by any court, administrative agency, bar association, or other professional group. If so, give the particulars."

Mirabal answered question 39 in the negative, even though he was under investigation by the Bar at that point for the errors in his 2018 campaign finance reports and the FEC consent order was entered just six weeks earlier.[2] When asked at the final hearing why he failed to disclose the pending Bar investigation on his

---

2. Mirabal was not elected to the bench in 2018, nor was he selected by the JNC to fill a vacancy in 2019. He was elected to the bench in 2020, but resigned three months after taking the bench when the Bar ceased its investigation and the Judicial Qualifications Commission initiated its own investigation. The Bar resumed its investigation following Respondent's resignation.

application to the JNC, Mirabal stated that it was "probably . . . a mistake copy and pasting" from a prior application that he had made to the JNC.

The referee found that Mirabal intentionally omitted the FEC consent order and pending Bar investigation from his JNC application. He determined that the existence of an investigation by the Bar is simply too profound a life event to have been accidentally omitted from an application that clearly and directly asks whether you are presently under investigation for a breach of ethics or unprofessional conduct. He, likewise, determined that Mirabal could not have accidently failed to disclose the FEC consent order entered just six weeks earlier when the question clearly directed him to disclose such an order. The referee, thus, recommends that Mirabal be found guilty of violating rule 4-8.4(c).

**The Bar Investigation**

In May 2018, Judge Milena Abreu filed a grievance against Mirabal, initiating these proceedings. On October 9, 2019, Mirabal submitted, through counsel, a response to Judge Abreu's supplemental grievance. He reviewed, edited, and approved the

response sent by his counsel.  The response, in relevant part, stated:

> My client is deeply concerned about the motives underlying this grievance and if necessary is able to relay a series of troubling events which occurred during and after the campaign, wherein Judge Abreu's then campaign advisor, and others went to great extremes to convince Mr. Mirabal to switch races to allow Judge Abreu to have an uncontested election; this included threats of Bar complaints and much more.  After Judge Abreu lost her August 2016 election to sitting Judge Fred Serafin, former candidate Abreu filed a frivolous lawsuit against her former opponent to undo the election.
> We do not want to escalate this matter any further and would hope that the resolution of the FEC complaint, with the payment of a civil sanction . . . would be the appropriate remedy and resolution.

Mirabal explained that he made the statement about Judge Abreu filing a frivolous lawsuit based solely on hearsay and that he did not attempt to ascertain its correctness before including it in the letter.  He later checked the public record and was unable to find any record of a lawsuit initiated by Judge Abreu against her former opponent.

The referee found that Mirabal made the statement about Judge Abreu filing a frivolous lawsuit with a reckless disregard for the truth, and that he made the statement to disparage Judge Abreu and attack her credibility as the complaining witness.  He

- 12 -

also found that the letter's use of the phrases "escalate this matter," "to relay a series of troubling events," and "if necessary" were intended as a threat that if the Bar disciplinary proceedings were not dropped, Mirabal would make troubling accusations about Judge Abreu. The referee recommends that Mirabal be found guilty of violating rules 4-8.1(c) ("An applicant for admission to the bar . . . shall not . . . commit an act that adversely reflects on the applicant's fitness to practice law."), 4-8.2(a) ("A lawyer shall not make a statement . . . with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge . . . ."), 4-8.2(b) ("A lawyer who is a candidate for judicial office shall comply with the applicable provisions of Florida's Code of Judicial Conduct."), 4-8.4(d) ("A lawyer shall not . . . engage in conduct in connection with the practice of law that is prejudicial to the administration of justice . . . ."), and Canon 7 of the Code of Judicial Conduct.

Based on these findings and guilt recommendations, and after making findings in aggravation and mitigation, the referee recommends that Mirabal be disbarred from the practice of law in Florida and that he be assessed the Bar's costs in these

proceedings. Mirabal filed a notice of intent to seek review of the referee's report. He challenges several of the referee's factual findings, each of the recommendations of guilt, and the recommended sanction.

**II.**

Mirabal first challenges the referee's findings of fact and recommendations of guilt for each rule violation.[3] Our review of a challenge to the referee's findings of fact is limited, and if the findings of fact are supported by competent, substantial evidence in the record, we will not reweigh the evidence and substitute our judgment for that of the referee. *Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)).

As for a referee's recommendations as to guilt, "the referee's factual findings must be sufficient under the applicable rules to support the recommendations." *Fla. Bar v. Patterson*, 257 So. 3d

---

3. We approve without further comment the referee's recommendation that Mirabal be found not guilty of violating the Rules Regulating The Florida Bar based on his 2018, 2019, and 2020 Form 6 financial disclosures, and based on his answer to questions 50, 51, and 53 in his 2019 JNC application.

56, 61 (Fla. 2018) (citing *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005)). Ultimately, the burden is on the party challenging the referee's findings of fact and recommendations as to guilt to demonstrate "that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007) (citing *Fla. Bar v. Carlon*, 820 So. 2d 891, 898 (Fla. 2002)).

**Rule 4-8.4(c)**

Rule 4-8.4(c) prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." To find a violation of the rule, "the Bar must prove intent." *Fla. Bar v. Brown*, 905 So. 2d 76, 81 (Fla. 2005). The element of intent, however, can be satisfied by a mere "showing that the conduct was deliberate or knowing." *Id.* (citing *Fla. Bar v. Fredericks*, 731 So. 2d 1249, 1252 (Fla. 1999)). The motive behind a lawyer's actions is not determinative, as long as the lawyer deliberately or knowingly engaged in the activity at issue. *Fla. Bar v. Watson*, 76 So. 3d 915, 922 (Fla. 2011).

*Campaign Finance Reports*

The referee found that Mirabal knowingly and repeatedly certified as correct campaign finance reports he knew were inaccurate. Specifically, he found that Mirabal submitted campaign finance reports with over-inflated numbers just before entering the group 43 race, that he allowed the over-inflated numbers to stand during the qualifying period for the race, and that such actions made it appear to others that he was a much better funded candidate than he actually was. We find abundant support for these findings in the record, namely from Mirabal's campaign finance reports and banking statements, as well as the FEC consent order, wherein Mirabal admitted that he "certified campaign reports [as] complete when they were not."

Despite the overwhelming support for the referee's findings, Mirabal claims that the errors in his campaign finance reports were simply unintentional mistakes, and he disputes that he filed the inaccurate reports to mislead others about the amount of funds in his campaign account. As support for his argument, Mirabal largely relies on his own testimony at the final hearing, as well as brief emails he sent Garcia and the Miami-Dade Elections

Department notifying them of the over-inflated numbers in his February 2018 reports. He also relies on a letter Garcia wrote to his counsel in June 2018 in which she explained the reason for the delay in correcting the over-inflated reports.

The referee, however, rejected Mirabal's argument that the errors in his campaign reports were simply unintentional mistakes. He found that Mirabal's assertion was not credible in light of his significant experience in accurately reporting financial matters as a closing agent for real estate transactions, and Mirabal offers no argument as to why we should not defer to the referee's assessment of his credibility on this issue. *See Fla. Bar v. Forrester*, 916 So. 2d 647, 652 (Fla. 2005) ("Because the referee is in the best position to judge the credibility of the witnesses, we defer to the referee's assessment."); *see also Fla. Bar v. Gross*, 610 So. 2d 442, 444 (Fla. 1992) (finding that a referee has the right not to believe the respondent's version of events). In any event, Mirabal cannot meet his burden in this case by simply pointing to contradictory evidence in the record. *Fla. Bar v. Committe*, 916 So. 2d 741, 746 (Fla. 2005) ("[An attorney] cannot meet this burden by simply pointing to

- 17 -

contradictory evidence when there is also competent, substantial evidence in the record to support the referee's findings.").

Therefore, we conclude that the referee's findings of fact are supported by competent, substantial evidence and are sufficient to support the recommendation that Mirabal violated rule 4-8.4(c).

*The 2019 JNC Application*

The referee here found that Mirabal intentionally engaged in dishonest conduct by omitting and misrepresenting material information in his 2019 JNC application. Mirabal maintains that the omissions were entirely unintentional. He blames his faulty memory, uncertainty about the status of the Bar investigation, and copying and pasting from an old application. Basically, Mirabal claims he had no knowledge of the errors and omissions in his application. We have rejected similar attempts to negate a finding of intent, particularly where the referee found that the lawyer's asserted lack of knowledge was not credible. *See Brown*, 905 So. 2d at 81 (rejecting argument that lawyer lacked intent to misrepresent the status of a certificate of deposit in an agreement because he did not read the agreement).

The referee found that the various explanations put forward by Mirabal as to why he was unaware of the omissions in his application were unworthy of belief, given that many of the omitted matters were fairly recent and far too significant to a lawyer to simply be forgotten or overlooked—i.e., the federal court's order in the *Bank of America* case and the Bar investigation. *See Fla. Bar v. Cohen*, 908 So. 2d 405, 411 (Fla. 2005) (stating that a referee may use common sense and logic in making findings of fact, especially when a lawyer's version of events "strains credulity"). Mirabal again offers no argument as to why we should not defer to the referee's assessment of his credibility on this issue. *See Forrester*, 916 So. 2d at 652.

Mirabal also takes issue with the referee's finding that his JNC application included a misleading explanation of the litigation in *Miguel F. Mirabal v. Bank of America Corp.* Mirabal identified the case in his application as a state action pertaining to loan irregularities and indicated that the case was ultimately settled through a short sale. The referee found this portrayal of the case was misleading because it failed to disclose that the case was removed to federal court where it was dismissed with prejudice

based on Mirabal's misrepresentations and failure to state a claim. Mirabal concedes that he should have disclosed the federal portion of the case but maintains that his explanation fairly disclosed the mortgage dispute between the parties and how the dispute was ultimately resolved.

Question 38, however, did not direct Mirabal to simply disclose with whom he had a dispute and how it was resolved. It directed him to list each lawsuit in which he was named as a party and to include certain details about the case, such as where the case was filed, the nature of the lawsuit, and the case's disposition. Mirabal's description of the *Bank of America* case either omitted or misrepresented many of the details question 38 asked him to provide, and it gave the reader the false impression that the case was just a state action about loan irregularities. He failed to disclose that the state case was removed to federal court, misrepresented that he initiated the case based on loan irregularities rather than as an attempt to force the lender to accept his fraudulent quit claim deed in lieu of foreclosure, and falsely stated that the case was settled with a short sale when it was actually dismissed with prejudice by the federal court. We, thus,

find ample support for the referee's finding that Mirabal provided a misleading description of the *Bank of America* case.

Accordingly, we conclude that the record supports the referee's findings of fact and that such findings overwhelmingly support the recommendation that Mirabal violated rule 4-8.4(c).

## Rule 4-8.1

The referee recommends that Mirabal be found guilty of violating rule 4-8.1(c). Under that rule, an applicant for admission to the Bar must not commit an act that adversely reflects on the applicant's fitness to practice law. R. Regulating Fla. Bar 4-8.1(c). Both the Bar and Mirabal agree that rule 4-8.1(c) is not applicable to these proceedings. The Bar urges us to instead find Mirabal guilty of violating rule 4-8.1(a), which prohibits a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter. Mirabal claims the Bar waived the issue by not seeking to have the referee's report corrected, and that his right to due process was violated by the failure of the Bar to not identify in the complaint which part of each rule he allegedly violated.

Due process in a Bar disciplinary proceeding, however, does not require the type of specificity demanded by Mirabal, nor does it preclude us from considering whether Mirabal violated rule 4-8.1(a). Due process requires only that Mirabal receive notice of the Bar's charges and be given an opportunity to be heard at the disciplinary hearing. *See Committe*, 916 So. 2d at 745. Both of these requirements were satisfied here. Mirabal was put on notice by the complaint in this case as to the specific conduct the Bar considered unethical and each of the rules he allegedly violated. The complaint specifically listed rule 4-8.1 as an alleged rule violation, along with the other rules at issue in this case, and Mirabal was given an opportunity to be heard at the disciplinary hearing as to the alleged misconduct.

Moreover, though not specifically charged in the complaint, we are free to consider whether Mirabal violated rule 4-8.1(a), as a violation of the rule falls squarely within the scope of the Bar's allegation in paragraph 29 of the complaint that Mirabal's October 2019 letter contained false statements. *See Fredericks*, 731 So. 2d at 1253 ("[S]pecific findings of uncharged conduct and violations of rules not charged in the complaint are permitted where the conduct

is either specifically referred to in the complaint or is within the scope of the specific allegations in the complaint.").

To violate rule 4-8.1(a), a lawyer must knowingly make a false statement of material fact in connection with a Bar disciplinary proceeding. As the basis for a violation of rule 4-8.1(a), the Bar looks to the statement in the October 2019 letter about Judge Abreu filing a frivolous lawsuit against her opponent in the 2016 election. The referee found that the statement was false, and Mirabal concedes that he has since learned that no such lawsuit existed. Mirabal maintains, however, that he believed the statement was true when the letter was drafted. The referee made no finding as to whether Mirabal knew the statement was false when the October 2019 letter was sent to the Bar, and there is no evidence in the record to support such a finding. Further, at no point does the Bar explain how the statement was in any way material to its investigation of the 2018 campaign finance reports or the 2019 JNC application. We, thus, conclude that the record is insufficient to support a violation of rule 4-8.1(a). Accordingly, we find Mirabal not guilty of violating rule 4-8.1(a).

## Rule 4-8.2(a)

Rule 4-8.2(a) states that a "lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." In assessing whether a lawyer has violated the rule, we apply an objective standard, asking whether the lawyer had "an objectively reasonable factual basis for making the statements." *Fla. Bar v. Ray*, 797 So. 2d 556, 559 (Fla. 2001). "Thus, once the Bar presents evidence establishing that a lawyer made statements concerning the qualifications or integrity of a judge, the burden shifts to the [lawyer] to provide an objectively reasonable factual basis for making the statements." *Fla. Bar v. Jacobs*, 370 So. 3d 876, 883 (Fla. 2023) (citing *Ray*, 797 So. 2d at 558 n.3).

In the October 2019 letter, Mirabal stated that Judge Abreu, after losing the 2016 election, filed a frivolous lawsuit against her opponent in the race in an attempt to undo the election results. The referee found that this statement was false, and that Mirabal made the statement to disparage Judge Abreu and attack her credibility as the complaining witness. Mirabal does not dispute these findings. He argues that he made the statement based on

- 24 -

information he received from a "trusted source," and that he had an objectively reasonable belief that the statement was true when the October 2019 letter was drafted. But Mirabal's personal belief in the accuracy of the statement does not constitute an objectively reasonable factual basis, nor does unverified information from a so-called "trusted source."

Mirabal contends that he has a right to challenge and question the motives of the complaining witness. That right, however, is not unlimited. He is free to challenge and question the motives of the complaining witness, as long as he does so within the bounds of the Bar rules. His conduct here exceeded those bounds.

We, thus, conclude that the record supports the referee's findings of fact and that such findings are sufficient to support the recommendation that Mirabal violated rule 4-8.2(a).

**Rule 4-8.2(b) and Canon 7**

The referee recommends that we find Mirabal guilty of violating rule 4-8.2(b) and Canon 7 of the Code of Judicial Conduct based on his October 2019 letter to the Bar. Rule 4-8.2(b) requires that a lawyer who is a candidate for judicial office comply with the applicable provisions of the Code of Judicial Conduct. Canon 7

directs how a judge or candidate seeking either election or appointment to a judicial office must conduct him or herself.

We have only found a violation of both rule 4-8.2(b) and Canon 7 in cases where the misconduct at issue occurred in connection with a lawyer or judge's candidacy for judicial office. *See, e.g.*, *Fla. Bar v. Aven*, 317 So. 3d 1095, 1096-97 (Fla. 2021) (sanctioning lawyer for violating rule 4-8.2(b) and Canon 7 during campaign for judicial office); *In re Santino*, 257 So. 3d 25, 33 (Fla. 2018) (removing judge from office for violating rule 4-8.2(b) and Canon 7 during campaign for office). The misconduct at issue here occurred during the Bar disciplinary proceedings and had no connection to Mirabal's candidacy for judicial office. We, therefore, find Mirabal not guilty of violating rule 4-8.2(b) and Canon 7.

## Rule 4-8.4(d)

Rule 4-8.4(d) prohibits a lawyer from engaging in "conduct in connection with the practice of law that is prejudicial to the administration of justice." The rule specifically identifies as included in the broad prohibition conduct that "knowingly, or through callous indifference, disparage[s], humiliate[s], or

discriminate[s] against . . . witnesses . . . on any basis." R. Regulating Fla. Bar 4-8.4(d).

Here, the referee found that Mirabal's October 2019 letter disparaged Judge Abreu and contained threatening statements aimed at intimidating or silencing her. Mirabal disputes this finding, contending that the letter is also subject to a more benign reading. He claims that the phrase "we do not want to escalate this matter any further" can be read as him considering possible litigation or as him simply not wanting the disciplinary action to proceed further.

In the letter, Mirabal falsely accused Judge Abreu of filing a frivolous lawsuit to undo her election loss and suggested that he could "relay a series of troubling events" about her. He then stated that he "[did] not want to escalate this matter any further and would hope that the resolution of the FEC complaint . . . would be the appropriate remedy and resolution." From these statements, the referee reasonably concluded that the letter was an attempt to intimidate or silence Judge Abreu. The fact that a different conclusion might be drawn from the same evidence if construed in a light more favorable to Mirabal does not render the referee's

finding unreasonable or lacking in support. *See Fla. Bar v. Niles*, 644 So. 2d 504, 506 (Fla. 1994) ("The responsibility for finding facts and resolving conflicts in the evidence is placed with the referee." (citing *Fla. Bar v. Hoffer*, 383 So. 2d 639 (Fla. 1980))).

Mirabal also claims that the statements in the October 2019 letter were not made "in connection with the practice of law," as he did not make them while representing clients or actively engaged in the practice of law. We disagree. The phrase "in connection with the practice of law" was added to rule 4-8.4(d) in 1994 to make sure that the rule is "limited in its application to situations involving the practice of law in order to ensure that the First Amendment rights of lawyers are not unduly burdened." *Fla. Bar re Amends. to Rules Regulating Fla. Bar*, 624 So. 2d 720, 721 (Fla. 1993). This includes a lawyer's own conduct during a Bar disciplinary proceeding.

Accordingly, we find that Mirabal's efforts in the October 2019 letter to disparage and intimidate Judge Abreu constitute conduct prejudicial to the administration of justice. *See Fla. Bar v. Committe*, 136 So. 3d 1111, 1116 (Fla. 2014) (finding that lawyer's efforts to intimidate defendant constituted conduct prejudicial to the administration of justice). We, thus, conclude that the record

supports the referee's findings of fact and that such findings are sufficient to support the recommendation that Mirabal violated rule 4-8.4(d).

## III.

We now turn to the referee's recommendation that Mirabal be disbarred for his misconduct. Our review of a referee's recommended discipline is broader than that afforded to the referee's findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. *See Patterson*, 257 So. 3d at 64; *Fla. Bar v. Anderson*, 538 So. 2d 852, 854 (Fla. 1989); *see also* art. V, § 15, Fla. Const.

## A.

As always, our review of the referee's recommended discipline begins with the Standards for Imposing Lawyer Sanctions. We find support for the referee's recommended discipline here in Standards 5.1(a)(6) and 7.1(a). Standard 5.1(a)(6) says disbarment is appropriate when a lawyer "engages in . . . intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." And Standard 7.1(a) says disbarment is appropriate when "a lawyer

intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer . . . and causes serious or potentially serious injury to a client, the public, or the legal system."

Mirabal engaged in a deliberate pattern of dishonesty. He deliberately disregarded his statutory obligations as a judicial candidate and repeatedly certified as correct campaign finance reports he knew were false. He also filed an application with the JNC in which he deliberately omitted and misrepresented material information about his background. His willingness to engage in these patently dishonest acts to further his own ambition of obtaining a judicial office "seriously adversely reflects on [his] fitness to practice." Fla. Std. Imposing Law. Sancs. 5.1(a)(6).

Moreover, Mirabal had a duty as an officer of the court to conduct himself with the utmost integrity while seeking a judicial office so as to not undermine the public's perception of the judiciary or the confidence it places in the judicial process. *See* R. Regulating Fla. Bar 4-8.2(b); Fla. Code Jud. Conduct, Canon

7A(3)(b).[4]  His disregard of this duty, along with his apparent willingness to engage in dishonest conduct to further his own ambitions, is not only harmful to the legal process, but raises serious concerns about his trustworthiness and overall fitness to continue the practice of law.  We, therefore, conclude that disbarment is the presumptive sanction in this case under Standards 5.1(a)(6) and 7.1(a).

**B.**

We next consider the relevant aggravating and mitigating circumstances found by the referee.  The referee found six aggravating factors under Standard 3.2(b).  He found that Mirabal had a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, engaged in bad faith obstruction of the disciplinary process, submitted a false statement during the disciplinary process, and had substantial experience in

---

4.  Under rule 4-8.2(b), a lawyer who is a candidate for judicial office must comply with the applicable provisions of the Code of Judicial Conduct.  A candidate for judicial office, under Canon 7A(3)(b), must "maintain the dignity appropriate to judicial office and act in a manner consistent with the impartiality, integrity, and independence of the judiciary."

the practice of law. *See* Fla. Stds. Imposing Law. Sancs. 3.2(b)(2)-(6), (9).

In mitigation, the referee found three mitigating factors under Standard 3.3(b). He found that Mirabal lacked a prior disciplinary record, demonstrated a reputation for good character, and that other penalties and sanctions had been imposed against him. *See* Fla. Stds. Imposing Law. Sancs. 3.3(b)(1), (7), (11).

Neither the Bar nor Mirabal challenge the aggravating and mitigating factors found by the referee. Mirabal, however, argues that the referee should have found an additional six mitigating factors. He claims that the record supports a finding that he had personal or emotional problems, made a timely good faith effort to rectify the consequences of his misconduct, had a cooperative attitude during the disciplinary process, engaged in interim rehabilitation, demonstrated remorse, and suffered prejudice as a result of unreasonable delay in the disciplinary process. *See* Fla. Stds. Imposing Law. Sancs. 3.3(b)(3)-(5), (9)-(10), (12).

"Like other factual findings, a referee's findings of mitigation and aggravation carry a presumption of correctness and will be upheld unless clearly erroneous or without support in the record."

*Fla. Bar v. Scheinberg*, 129 So. 3d 315, 319 (Fla. 2013) (quoting

*Germain*, 957 So. 2d at 621). A referee's failure to find that an

aggravating or mitigating factor applies is afforded the same

deference. *Id.* Ultimately, the party challenging a referee's findings

in aggravation or mitigation "must establish there is a lack of

evidence in the record to support such findings or that the record

clearly contradicts the referee's conclusions." *Fla. Bar v. Horton*,

332 So. 3d 943, 949 (Fla. 2019) (quoting *Fla. Bar v. Glueck*, 985 So.

2d 1052, 1056 (Fla. 2008)).

Our review of the record reveals little, if any, actual support for

any of the additional six mitigating factors sought by Mirabal.

Indeed, the only factor that merits any discussion is Mirabal's

request that we find that he demonstrated remorse for his

misconduct. *See* Fla. Std. Imposing Law. Sancs. 3.3(b)(12). As

support for this factor, Mirabal points to his testimony at the

sanctions hearing, where in response to a question from his counsel

about whether he was remorseful, he stated "yes, remorseful, I'm

remorseful as to the mistakes I made." But "[t]he fact that there is

some evidence in the record to support a finding that a mitigating

factor might apply does not mean that the referee should have

necessarily found it applicable." *Fla. Bar v. Herman*, 8 So. 3d 1100, 1106 (Fla. 2009). This is especially true here, as the referee at several points found Mirabal's testimony not credible, and his expression of remorse is inconsistent with his actions during these disciplinary proceedings.

Accordingly, we find no error in the referee's failure to find any of the six mitigating factors sought by Mirabal, and we approve the referee's findings in aggravation and mitigation.

## C.

In the final step of our review of the referee's recommended discipline, we look to caselaw for guidance on how we have disciplined other lawyers for comparable acts of misconduct. In this case, we find support for the referee's recommended discipline in *Florida Bar v. Koepke*, 327 So. 3d 788 (Fla. 2021). In that case, we disbarred a lawyer who made a series of false statements in an alimony dispute with his former wife in an effort to conceal his receipt of a substantial contingency fee he received as part of a settlement in a personal injury case. *Id.* at 790-91. Koepke denied that any such settlement existed in response to discovery requests and orders that specifically directed its production, and he did not

reveal the settlement's existence until the judge in the alimony case reviewed his case file in the personal injury matter. *Id.* Though he lacked a prior disciplinary record, we disbarred Koepke based on his willful lack of candor and the fact that he engaged in a pattern of deliberate dishonesty for personal gain. *See id.* at 792-94; *see also Fla. Bar v. St. Louis*, 967 So. 2d 108, 122-23 (Fla. 2007) (disbarring a lawyer who made a series of false or misleading statements to a court and the Bar for personal gain).

We see little difference between Mirabal's conduct in this case and the conduct of the lawyer in *Koepke*. Mirabal, too, engaged in a clear and deliberate pattern of dishonesty to advance his own interests, and he did so at times when he had a duty of honesty and candor. We are further convinced that disbarment is the correct sanction in this case when Mirabal's dishonesty in the judicial selection process is considered alongside his misconduct during the Bar's investigation. The totality of Mirabal's dishonesty in this case is simply too great to be offset by any of the findings in mitigation, or to justify any sanction other than disbarment.

In the end, Mirabal exhibited basic, fundamental dishonesty with his conduct in this case, and we have repeatedly made plain

that such a serious flaw "cannot be tolerated by a profession that relies on the truthfulness of its members." *Fla. Bar v. Schwartz*, 334 So. 3d 298, 303 (Fla. 2022) (quoting *Fla. Bar v. Berthiaume*, 78 So. 3d 503, 510 (Fla. 2011)). We, accordingly, approve the referee's recommended discipline and disbar Mirabal from the practice of law in Florida.

## IV.

The referee's findings of fact and recommendations as to guilt are approved, except for the recommendations of guilt as to rules 4-8.1(a), 4-8.2(b), and Canon 7 of the Code of Judicial Conduct, which are hereby disapproved. The referee's recommended discipline is approved, and Miguel Fernando Mirabal is disbarred from the practice of law in Florida. Mirabal's disbarment will be effective 30 days from the date of this opinion so that he can close out his practice and protect the interests of existing clients. If Mirabal notifies this Court in writing that he is no longer practicing and does not need the 30 days to protect existing clients, this Court will enter an order making his disbarment effective immediately. Mirabal must fully comply with rules 3-5.1(h) and, if applicable, 3-6.1.

Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Miguel Fernando Mirabal in the amount of $7,123.27, for which sum let execution issue.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, The Florida Bar, Tallahassee, Florida, Patricia Ann Toro Savitz, Staff Counsel, The Florida Bar, Tallahassee, Florida, Jennifer R. Falcone, Bar Counsel, The Florida Bar, Miami, Florida, and Mark Lugo Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida,

    for Complainant

Herman J. Russomanno and Herman J. Russomanno III, of Russomanno & Borrello, P.A., Miami, Florida,

    for Respondent